## SCOFIELD et al. v. WHITE.

The Revenue Law of 1854 authorized the payment of a portion of the taxes in Comptroller's warrants. The acts of 1855 and 1856 provide for the funding of the State debt, and the collection of the revenue in cash, and forbids the Treasurer to liquidate any of the debt, except as therein provided : Held, that the act of 1854, allowing payment in warrants, was thereby repealed.

The acceptance by a collector of taxes, of a warrant, is not a liquidation of the debt, but the receipt of it by the State Treasurer, from the collector, would be a liquidation, for which the Treasurer would be responsible.

The law does not favor repeals by implication, and where there is an apparent conflict between two acts, the Court should reconcile them if possible, but if this cannot be done, then the last act must govern.

APPEAL from the District Court of the Sixth Judicial District.

This was an amicable proceeding by the appellants against the defendant, as tax-collector of the county of Sacramento, to compel him to receive the sum of two hundred and ten dollars, in Comptroller's warrants, in lieu of cash, for the State tax on their property. A rule having been obtained in the Court below, against defendant, to show cause, etc., on the return thereof, it was discharged, and judgment rendered, dismissing the petition, from which this appeal was had.

W. T. Wallace, Attorney-General, for Appellants.

MURRAY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

This was an application for a mandamus, to compel the collector of taxes in Sacramento county to receive State Comptroller's warrants, in payment of the taxes levied to defray the ordinary expenses of the State government.

By the provisions of the ninety-third section of the Revenue Act of 1854, the collector is authorized to receive a portion of the taxes in Comptroller's warrants, and the simple question involved in this case is, whether this section has been repealed or not. There is no law on the statute books which repeals it in

express terms, but it is contended that it is repealed by implication, inasmuch as it is inconsistent with the provisions of the acts of 1855 and 1856, to fund the civil indebtedness of the State.

It may be premised that the law does not favor repeals by implication ; that where there is an apparent conflict between two acts, it is the duty of the Court, if possible, to reconcile them ; but if this cannot be done, then the last act must govern.   It is also the duty of the Court to ascertain the object and intention of the Legislature, in passing the law, the better to understand whether the apparent inconsistencies between the prior and subsequent acts were the result of design or accident.

Adopting this rule in the present case, a mere reference to the acts of 1855 and 1856, and an inquiry into the object designed to be accomplished by the Legislature, will relieve the question from all embarrassment.   At the time of the passage of the act of 1855, there was a large amount of debt outstanding, in the form of Comptroller's warrants, and the Legislature provided for calling in these warrants, and the issuing of bonds in the place thereof, with the object of putting the credit of the State upon a cash basis.   This design was fully apparent, from the language of the first section of the act of March, 1855, which provides that, "for the purpose of funding so much of the indebtedness of the State, as has accrued, and remains unpaid, since the thirteenth of June, 1853, up to the first day of July, 1855, and thereafter to collect the revenue of the State in gold and silver only," etc. ; and is shown more clearly if possible, by a supplemental act, passed on the thirty-first of March, 1855.

The act of April, 1856, provides for funding all the outstanding indebtedness of the State, at the time, and any subsequent indebtedness, that may accrue up to the first of January, 1857, and forbids the State Treasurer to *liquidate* any of said indebtedness, except in the mode pointed out by the provisions of that act.

I am of opinion that these sections show, conclusively, the design of the Legislature to collect the revenue of the State in cash.   The policy of the several acts which I have referred to is too obvious to be doubted.   By funding all the outstanding indebtedness, it was supposed the State might start fair, and, by the passage of a judicious revenue bill, be able to pay the actual expenses in cash, while she at the same time kept down the interest on the public debt, and accumulated a fund for its gradual liquidation.

The learned counsel for the appellant contends that the State Treasurer does not liquidate an indebtedness of the State, by receiving warrants from the county treasurer, which have been paid for taxes, but that it is the county collectors who liquidate the indebtedness.   This position is untenable ; the county officers, so far as they are charged with the duty of collecting the

revenues of the State, must act in obedience to the laws, and in subordination to the officers of the State, whose duty it is to pass finally upon the whole matter. The mere acceptance of a Comptroller's warrant, by a collector, would not liquidate the indebtedness it evidenced, until the State Treasurer had received and receipted for the same, and if he mistook his duty, or violated the law, he would be responsible therefor.

It is said that this rule will withdraw the swamp and overflowed lands, and the school lands, from the market. Such may be the case; but it would only be a temporary inconvenience, easily remedied by legislation, and trifling in its consequences, when compared to the greater evils which would flow from a different rule.

Judgment affirmed.