[No. 20126.  In Bank. —December 28, 1885.]

In the Matter of YICK WO, on Habeas Corpus.

Municipal Corporations — San Francisco — Occupations Contrary to Public Policy — Regulation of. — The board of supervisors of the city and county of San Francisco has power, under section 2 of. article 11 of the constitution, and section 74 of the consolidation act of April 19, 1856, to prohibit or regulate all occupations which are against good morals, contrary to public order and decency, or dangerous to the public safety.

Id. — Laundry Ordinance — Restriction of Business to Particular Kind of Buildings. — In the exercise of such power, the board of supervisors may prohibit any person from establishing, maintaining, or carrying on a laundry within the corporate limits of the city and county, without having first obtained· the consent of the board, unless the same be located in a building constructed either of brick or stone.

Id. — Certain Orders Held not Repealed. — Order No. 1569, and section 68 of order No. 1587, of such board, prescribing the kind of buildings in which laundries may be located, have not been repealed by order No. 1767, regulating the establishment and maintenance of public laundries within certain limits of the city and county.

Id. — Construction of Municipal Ordinances. — The rules for the construction of ordinances and orders of a municipal corporation are the same as for the construction of statutes.

Id. — Repeal of Statutes by Implication. — The repeal of statutes by implication is not favored, and where there is an apparent conflict between two acts, the court should reconcile them if possible; but if this cannot be done, the last act must govern.

Id. — Treaty Obligations with China. — A municipal regulation which applies alike to all persons engaged in a given pursuit, without distinction as to nationality, residence, age, sex, or condition, is not in violation of treaty obligations existing between the United States and China.

Application for a writ of *habeas corpus*. The facts are stated in the opinion.

*Hall McAllister, L. H. Van Schaick,* and *D. L. Smoot,* for Petitioner.

*Alfred Clarke,* for Respondent.

Searls, C.—1. Yick Wo, a native of China, came to the United States in 1861, and for twenty-two years last past has been engaged in the laundry business at 349 Third street, San Francisco.

2. Petitioner is an alien and a subject of the emperor of China.

The petition for a writ of *habeas corpus* was filed August 24, 1885, and a writ issued returnable September 4, 1885. The return shows that petitioner is held by the respondent as sheriff of the city and county of San Francisco, under a conviction and sentence for a violation of section 1 of order 1569 and section 68 of order 1587 of the board of supervisors of the city and county of San Francisco.

Ordinance or order No. 1569 of the board of supervisors, under which petitioner was convicted, is in the following language:—

ORDER NO. 1569.—PRESCRIBING THE KIND OF BUILDINGS IN WHICH LAUNDRIES MAY BE LOCATED.

*The People of the City and County of San Francisco do Ordain as follows:*—

SEC. 1.   It shall be unlawful from and after the passage of this order for any person or persons to establish, maintain, or carry on a laundry within the corporate limits of the city and county of San Francisco, without having first obtained the consent of the board of supervisors; except the same be located in a building constructed either of brick or stone.

SEC. 2. It shall be unlawful for any person to erect, build, or maintain, or cause to be erected, built, or maintained, over or upon the roof of any building now erected or which may hereafter be erected within the limits of said city and county, any scaffolding, without first obtaining the written permission of the board of supervisors, which permit shall state fully for what purpose said scaffolding is to be erected and used, and said scaffolding shall not be used for any other purpose than that designated in such permit.

SEC. 3. Any person who shall violate any of the provisions of this order shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than one thousand dollars, or by

imprisonment in the county jail not more than six months, or by both such fine and imprisonment.

In board of supervisors, San Francisco, May 24, 1880. After having been published five successive days, according to law, taken up and passed by the following vote:—

Ayes,—Supervisors Schottler, Mason, Litchfield, Drake, Whitney, Eastman, Fraser, Taylor, Doane, Bayley, Torrey, Stetson.

Approved, San Francisco, May 26, 1880.

JNO. A. RUSSELL, Clerk.

I. S. KALLOCH,

Mayor, and Ex-officio President Board Supervisors.

Section 68 of order 1587, passed July 28, 1880, is in substance and effect the same as section 1 of No. 1569, quoted above.

It is admitted that petitioner had a license, a certificate from the board of firewardens, and a certificate from the health officer, copies of which are on file.

It is further admitted that petitioner applied to the board of supervisors, June 1, 1885, for consent of said board to maintain and carry on his laundry, but that said board refused said consent.

By section 2 of article 11 of the constitution of this state, it is provided that "any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

By section 74 of the act of April 19, 1856, usually known as the Consolidation Act, the board of supervisors is empowered, among other things, "to provide by regulation for the prevention and summary removal of nuisances to public health, the prevention of contagious diseases, . . . . to prohibit the erection of wooden buildings within any fixed limits where the streets shall have been established and graded, . . . . to regulate the sale, storage, and use of gunpowder or other explosive or com-

bustible materials and substances, and make all needful regulations for protection against fire.    To make such regulations concerning the erection and use of buildings as may be necessary for the safety of the inhabitants."

"Unwholesome trades, slaughter-houses, operations offensive to the senses, the deposit of powder, the application of steam-power to propel cars, the building with combustible materials, and the burial of the dead, may all," says Chancellor Kent, "be interdicted by law, in the midst of dense masses of population, on the general and rational principle that every person ought [to so, use his property as not to injure his neighbors; and that private interests must be made subservient to the general interests of the community."    (2 Kent's Com. 340.)

Every citizen holds his property subject to the proper exercise of the powers and restrictions above referred to.

A large proportion of the laws and ordinances, relating to the comfort, safety, health, convenience, good order, and general welfare of the inhabitants of cities and towns, and which we style *police laws and regulations,* have the effect in a greater or less degree to disturb and curtail individual enjoyment and personal rights.

For the injury which the citizen suffers, he is, in contemplation of law, compensated by his share in the general benefits flowing from the regulations, found essential to the general welfare.    It is but a reasonable restraint upon the use of property in those cases, where its unlimited use or enjoyment would produce serious mischief to others.

The right to establish fire limits, and to interdict the construction of wooden buildings within certain specified bounds, is a familiar exercise of the authority usually conferred upon municipal corporations.

In towns like San Francisco, constructed largely of wood, the danger from fire is ever present and overshadowing.

It is not therefore strange that the legislature, in con-

ferring certain powers upon the municipal authorities of
the city, included not only the authority to regulate the
*erection,* but also the *use* of buildings, so far as necessary
for the safety of the inhabitants.

To prevent the construction of wooden buildings
within the densely inhabited portions of a city may
become an imperative duty on the part of the authori-
ties. They may not destroy those already erected. But
the use of wooden structures within given limits, for
specific and highly dangerous purposes, may become
quite as detrimental as the erection of new structures of
the same character; and as the power of regulation ex-
tends to the *use* as well as to the *erection* of wooden
buildings, we can discern no assumption of unwar-
ranted authority in the order No. 1569 which interdicts
the establishing, maintaining, or carrying on laundries,
except by consent of the board of supervisors, save in
brick or stone buildings. The business of conducting a
laundry involves a constant use of fires, under circum-
stances, and perhaps by persons, liable to result in con-
flagrations; of these facts the supervisors are the judges.

In given instances, under favorable circumstances,
the danger of fire from this business may be reduced to
a minimum, or may not at all jeopardize the surround-
ing property. In this last class of cases, no objection
can be seen why permits should not be granted, as pro-
vided for in order 1569. It has been the practice in
municipal corporations to vest the granting of licenses
for a variety of objects in the discretion of the corporate
authorities, or some of them. Without such authority,
boards of health and various other agencies by which
the lives and health of citizens, and the safety and due
enjoyment of their property are protected, would be
powerless for good.

The argument that the discretion to permit the estab-
lishment of laundries in wooden buildings by the super-

visors is liable to abuse, cannot be held conclusive.    No doubt all power is liable to abuse, wheresoever lodged.

In theory, however, as well as in ordinary practice, the persons selected to discharge governmental duties, by reason of supposed qualifications for the several positions in which they are placed, will be found to possess the capacity and integrity essential to a proper administration of the trust reposed in them.

If they prove deficient in these qualifications, the evil cannot be remedied by invalidating their acts, performed by virtue of authority vested in them, or where they have exercised discretionary powers, by impugning their judgment or motives, rather than their right to exercise the discretion.

The board of supervisors, under the several statutes conferring authority upon them, has the power to *prohibit or regulate* all occupations which are *against good morals, contrary to public order and decency, or dangerous to the public safety.*

Clothes-washing is certainly not opposed to good morals, or subversive of public order or decency, but when conducted in given localities, it may be highly dangerous to the *public* safety.    Of this fact the supervisors are made the judges, and having taken action in the premises, we do not find that they have *prohibited* the establishment of laundries, but that they have, as they might well do, *regulated* the places at which they should be established, the character of the buildings in which they are to be maintained, etc.

The process of washing is not prohibited by thus regulating the places at which, and the surroundings by which, it must be exercised.

The order No. 1569 and section 68 of order No. 1587 are not in contravention of common right, or unjust, unequal, partial, or oppressive in such sense as authorizes us in this proceeding to pronounce them invalid.

It is next contended that order No. 1569 and section

68 of order 1587 are repealed by order No. 1767, adopted April 8, 1884, and which is in the following language:—

ORDER No. 1767.—REGULATING THE ESTABLISHMENT AND MAINTENANCE OF PUBLIC LAUNDRIES AND PUBLIC WASH-HOUSES WITHIN CERTAIN LIMITS IN THE CITY AND COUNTY OF SAN FRANCISCO.

*Preamble.*—Whereas, the indiscriminate establishment of public laundries and public wash-houses, where clothes and other articles are cleansed for hire, is injurious and dangerous to public health and public safety, and prejudicial to the well-being and comfort of the community, and depreciates the value of property in those neighborhoods where such public laundries and such public wash-houses are situate;

Under and in conformity to the authority vested by section 11 of article 11 of the constitution of the state of California, and of subdivision 9 of section 74 of an act entitled "An act to repeal the several charters of the city of San Francisco, and to consolidate the government thereof," approved April 19, 1856, and the several acts amendatory thereto and supplementary thereof:—

*The People of the City and County of San Francisco do Ordain as follows:—*

*Limits Defined.*—SEC. 1. On and after the passage of this order it shall be unlawful for any person or persons to establish, maintain, or carry on the business of a public laundry or a public wash-house, where clothes or other articles are cleansed for hire, within that portion of the city and county of San Francisco lying and being within the following boundaries: Commencing at the intersection of Devisadero Street with the waters of the bay of San Francisco; thence following the bay shore easterly and southerly to the easterly end of Channel Street; thence along Channel Street in a westerly direction to Potrero Avenue; thence southerly along Potrero Avenue to Army Street; thence westerly along Army Street to Dolores Street; thence northerly along Dolores Street to

and across Market Street to Ridley Street; thence westerly along Ridley Street to Devisadero Street; and thence northerly along Devisadero Street to the bay and point of commencement,—without having first complied with the conditions hereinafter specified.

*Persons Conducting Laundries must Obtain Certificates from Health Officer and Firewardens as to the Condition of Premises.*—SEC. 2. It shall be unlawful for any person or persons to conduct or maintain a public laundry or washhouse within the district named in section 1 of this order, without having first obtained a certificate signed by the health officer of the city and county of San Francisco that the premises are properly and sufficiently drained, and that all proper arrangements for carrying on the business without injury to the sanitary condition of the neighborhood have been complied with, and particularly that the provisions of section 4 of order No. 1587 of this board have been complied with; also a certificate signed by the board of firewardens of the city and county of San Francisco, that the stoves, washing and drying apparatus, and the appliances for heating smoothing-irons are in good condition, and that their use is not dangerous to the surrounding property from fire, and that all proper precautions have been taken to comply with the provisions of order No. 1752, "to define the fire limits of the city and county of San Francisco, and making regulations concerning the erection and use of buildings in said city and county."

*Certificate of Health Officer and Board of Firewardens in Regard to Laudries, etc.*—*No Charge to be Made therefor.* —SEC. 3. It shall be the duty of the health officer, also of the board of firewardens, respectively, upon application from any person or persons proposing to open or conduct the business of a public laundry within that portion of this city and county designated and described in section 1 of this order, to inspect the premises in which it is proposed to carry on said business, or in which said

business is being carried on, with a view to ascertaining whether the said premises are provided with proper drainage and sanitary appliances; also, whether the provision of order No. 1752 of this board has been complied with, and if found in all respects satisfactory, then to issue said applicants the certificates provided for in section 2 of this order.

No charge whatever shall be made or compensation or fee collected or received for the performance of any of the services required by the provisions of this order, in the inspection of premises or the issuance of a certificate, but all such services shall be performed free of charge.

*Times at Which Laundry Work may not be Performed.*— Sec. 4. No person or persons owning or employed in the public laundries or public wash-houses provided for in section 1 of this order shall wash or iron clothes between the hours of 10 o'clock p. m. and 6 o'clock a. m., nor upon any portion of that day known as Sunday.

*No Person Suffering from Infectious Diseases to be Permitted to Sleep, Lodge, or Remain in Any Public Laundry.*— Sec. 5. No person or persons engaged in the laundry business within that portion of this city described in section 1 of this order shall permit any person suffering from any infectious or contagious disease to lodge, sleep, or remain within or upon the premises used by him, her, or them for the purposes of a public laundry.

*Penalty.*—Sec. 6. Any person or persons establishing, maintaining, or carrying on the business of a public laundry or a public wash-house, where clothes or other articles are cleansed for hire, within the limits of this city and county, as described in section 1 of this order, without first having complied with the provisions of section 2 of this order, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than one thousand dollars, or by imprisonment of not more than six months, or by both; and any person who shall violate any of the provisions of sections

4 and 5 of this order shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than five dollars nor more than fifty dollars, or by imprisonment not more than one month, or by both such fine and imprisonment.

*Certificates of Health Officer and Board of Fire Commissioners to be Exhibited in a Conspicuous Place.*—Sec. 7. The certificates from the health officer and the board of fire-wardens, as required by section 2 of this order, shall be exhibited in some conspicuous place on the premises, and the same shall be produced on the demand of any officer of the city and county of San Francisco.

*Police to Enforce the Provisions of Order.*—Sec. 8. The police authorities are hereby directed to have the provisions of this order strictly enforced.

*Repeal of All Conflicting Orders.*—Sec. 9. Order No. 1691, and all orders or parts of orders in conflict with any of the provisions of this order, are hereby repealed.

In board of supervisors, San Francisco, April 7, 1884.

After having been published five successive days, according to law, taken up and passed by the following vote:—

Ayes,—Supervisors Sullivan, Reichenbach, Shirley, Burton, Smith, Pond, Griffin, Strother, Lewis, Ranken, James, Ashworth.

Absent,—Supervisor Pond.

Jno. A. Russell, Clerk.

Approved, San Francisco, April 8, 1884.

Washington Bartlett,

Mayor, and Ex-officio President Board of Supervisors.

The rules for the construction of ordinances and orders of a municipal corporation are the same as for the statutes of the legislature.

The Civil Code of this state (section 20) affords no guide for determining the question of the repeal of the acts of municipal corporations, except so far as its rules

enunciate general principles, alike applicable to all statutory enactments, general and local.

' The law does not favor the repeal of statutes by implication, and where there is an apparent conflict between two acts, the court should reconcile them if possible, but if this cannot be done, then the last act must govern. (*Schofield* v. *White*, 7 Cal. 400; *People* v. *R. R. Co.*, 28 Cal. 254.)

Where a subsequent statute is repugnant to a prior one, the latter operates without any repealing clause, as a repeal of the former, or where not repugnant, if it clearly appears from the latter that it was intended as a revision or substitute for the former, it will repeal it so far as revised or substituted. (*Pierpont* v. *Crouch*, 10 Cal. 315.)

In order for a subsequent act to repeal a former, it should appear from the last act that it was intended to take the place of or repeal the former, or that the two acts are so inconsistent that force and effect cannot be given to both. (*Ex parte Smith*, 40 Cal. 419; *Estate of Wixon*, 35 Cal. 320; *People* v. *Burt*, 43 Cal. 560; *People* v. *Sargent*, 44 Cal. 430.)

Section 9 of the order No. 1767 expressly repeals "order No. 1691, and all orders or parts of orders in conflict with any of the provisions of this order."

It follows that order No. 1569 is not expressly repealed, unless there is a conflict between its provisions and those of the later order or orders. We may dismiss some intermediate orders of the board from observation, for the reason that we find in them no support for the contention of petitioner not contained in No. 1767.

We fail to find in order No. 1767 evidence of any such repugnance or conflict with No. 1569 as to warrant the conclusion that the latter is repealed by implication.

They may, with propriety, both stand together. No. 1767 fixes the limits within which a public laundry or wash-house shall not be carried on without complying

with certain conditions therein specified.   These conditions relate to certificates to be procured from the health officer as to drainage and sanitary conditions, and from the board of firewardens, showing the stoves, washing and drying apparatus, are in good condition, and not dangerous to surrounding property from fire, etc.

The order also fixes and designates certain hours of the night within which washing and ironing shall not be carried on.

The prominent feature of the order consists in the limits which it fixes, within which certain restrictions apply.   All of these provisions may with propriety be enforced, and the necessity still exist, in the densely settled portions of the town, for this business to be conducted only in buildings of brick or stone.

As order No. 1569 is not expressly repealed by order 1767, and as the latter is not repugnant to or inconsistent with the former, we are of opinion it did not repeal the former by implication, and that section 1 of order No. 1569 is still in full force and effect, and applicable alike to all classes and conditions of men engaged or to engage in the business therein indicated.

We have not deemed it necessary to discuss the question in the light of supposed infringement of petitioner's rights under the constitution of the United States, for the reason that we think the principles upon which contention on that head can be based have in effect been set at rest by the cases of *Barbier* v. *Connolly*, 113 U. S. 27, and *Soon Hing* v. *Crowley*, 113 U. S. 703.

That this class of orders is not repugnant to our state constitution need not now be discussed, as their validity with reference to that instrument has been sustained in *Ex parte Mount*, 66 Cal. 448, 575; *Ex parte Moynier*, 65 Cal. 33; *Ex parte Walters*, 65 Cal. 269.

A regulation which applies alike to all persons engaged in a given pursuit, without distinction as to nationality, residence, age, sex, or condition, is not, when otherwise

regular and valid, subject to the criticism of being in violation of treaty obligations existing between the United States and China.

We are of opinion the petitioner should be remanded to the custody of the sheriff.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the petitioner is remanded to the custody of the sheriff.