[No. F005455. Fifth Dist. Mar. 23, 1987.]

GREGORY NICOLINI, Plaintiff and Appellant, v.
COUNTY OF TUOLUMNE et al., Defendants and Respondents.

**COUNSEL**

Carroll, Burdick & McDonough and Gary M. Messing for Plaintiff and Appellant.

Stephen Dietrich, Jr., County Counsel, and Leo J. Faulstich, Deputy County Counsel, for Defendants and Respondents.

## OPINION

MARTIN, Acting P. J.—On January 3, 1984, appellant Sergeant Gregory Nicolini filed a petition for writ of administrative mandate pursuant to section 1094.5 of the Code of Civil Procedure[1] seeking a reversal of the decision of respondents Tuolumne County Sheriff's Department (Department) and the Tuolumne County Board of Supervisors (Board) to terminate appellant for "dishonesty" and a "failure of good behavior that causes discredit to the County." (Tuolumne County Ord. No. 2.56.269, subsections (f) and (o).)

The peremptory writ of mandate was denied and appellant appeals.

### FACTS

When appellant was 21 years of age, he commenced employment as a deputy sheriff of the Department. During his nine years with the Department, appellant was never disciplined nor recommended for discipline. His personnel file contains references to his outstanding job performance, favorable evaluations, regular merit increases and letters of appreciation. Appellant was promoted to the rank of sergeant in 1980 and is a certified paramedic.

Appellant was initially suspended on March 20, 1983, for a violation of Tuolumne County Ordinance No. 2.56.260, subsection (g)(2), to wit: "in possession, in use, under the influence of, or trafficking in habit-forming drugs and/or narcotics while at work or on [Tuolumne] County property. An additional violation of subsection F, dishonesty, [was] also being investigated."

The investigation was initiated due to an incident which occurred on March 17, 1983, when Lieutenant Robert Wolfgang received a telephone call from a Mr. Walt Blade stating Sergeant Nicolini had been at Mr. Blade's place of business and he was concerned about appellant's condition in that appellant appeared to be "under the influence of something." Lieutenant Wolfgang confronted appellant in appellant's office where Lieutenant Wolfgang found three syringes. He noted appellant was very pale and noticed one pupil was dilated while the other pupil was constricted. Appellant appeared very nervous, trembling, and his speech was thick tongued and his eyelids would close during the conversation. Lieutenant Wolfgang testified appellant was insistent on finishing his shift and explained he had taken a non-narcotic drug called Ergatomine to prevent the onset of a migraine headache. Subse-

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

quently, one of the syringes was found to contain Demerol, a narcotic pain killer.

Appellant testified he had given himself two injections of Ergatomine to prevent the onset of a migraine headache but it was not working. He asked the dispatcher to give him a ride home but the dispatcher said appellant would have to wait for a ride until the end of the dispatcher's shift. According to appellant, he took himself off duty, told the dispatcher to hold all calls, went into his office and injected a prescribed dose of Demerol to ease the pain. While he did not clearly recollect the questions asked of him by Lieutenant Wolfgang, he understood Lieutenant Wolfgang to be asking what drugs appellant had taken while on duty.

On April 15, 1983, an amended notice of disciplinary action was sent to appellant adding additional charges that appellant, while in uniform, obtained a prescription for Valium which he altered and then presented the fraudulent prescription to a pharmacist for an excessive amount of Valium.

A hearing was held before Sheriff-Coroner Wallace Beery who reviewed testimony, physical evidence and investigative reports and determined appellant violated Tuolumne County Ordinance No. 2.56.260, subsection (f), dishonesty in regard to both incidents; subsection (g), improper use of drugs in regard to the fraudulent prescription; and subsection (o), discredited the county due to behavior in regard to both incidents.

A hearing was held before the Board on August 31, 1983. The Board rendered a decision finding insufficient evidence to uphold the findings of the Department that appellant was dishonest in his initial conversation with Lieutenant Wolfgang on March 17, 1983. The Board also found there was sufficient evidence to uphold the findings of the Department that on or about July 10, 1980, appellant altered a prescription for Valium while in uniform and filled that prescription at Thrifty Drug Store in Sonora, California. This conduct on July 10, 1980, the Board found, constituted dishonesty within the meaning of subsection (f) of Tuolumne County Ordinance No. 2.56.260, and that appellant's conduct in altering and filling the fraudulent prescription was a failure of good behavior that caused discredit to the county within the meaning of subsection (o) of Tuolumne County Ordinance No. 2.56.260. The Board affirmed the decision of the Department to terminate appellant's employment.

Appellant filed a petition for a peremptory writ of administrative mandate pursuant to section 1094.5 on January 3, 1984. The lower court entered a judgment denying the peremptory writ on January 24, 1985. This appeal follows.

## I.

█ Appellant contends the trial court erred in upholding appellant's termination by the Board due to the transient and isolated nature of the alleged misconduct.

█ In *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], the California Supreme Court held, that "... in all such cases [review of local agencies], if the order or decision of the agency substantially affects a fundamental vested right, the court, in determining under section 1094.5 of the Code of Civil Procedure whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence." (*Id.* at pp. 44-45.)

As a member of the Department, appellant had a vested right to continued employment absent the existence of a legal cause for termination. (*Quintana* v. *Board of Administration* (1976) 54 Cal.App.3d 1018, 1021 [127 Cal.Rptr.11]; *Brush* v. *City of Los Angeles* (1975) 45 Cal.App.3d 120, 123 [119 Cal.Rptr. 366].)

█ The lower court reviewed the proceedings before the Board and properly acknowledged its review was governed by the independent judgment rule.[2] The court determined the weight of the evidence, together with appellant's admission of wrongdoing, supported the findings of the Board. The court then stated: "The remaining issue concerns the severity of the penalty imposed by the Board.

"The independent judgment rule has no application in the determination of this issue. The Board alone is vested with the duty and responsibility of imposing the penalty and its ruling can only be vacated upon a showing that there was an abuse of its discretion in establishing the penalty. The Court's decision cannot be substituted for that of the Board.

"The measure of the penalty in this instance cannot be determined apart from the responsibilities and role of a law enforcement officer. The credibility of such an official must always be above challenge to perform effec-

---

[2]As to issues upon which the trial court has properly exercised its independent judgment, the appellate court reviews the findings of the trial court to determine whether they are supported by substantial evidence on the whole record. (*Schmitt* v. *City of Rialto* (1985) 164 Cal.App.3d 494, 501 [210 Cal.Rptr. 788]; *Brush* v. *City of Los Angeles, supra,* 45 Cal.App.3d at p. 123.)

tively. *Cadilla v. Board of Medical Examiners* [(1972) 26 Cal.App.3d 961;] *Ackerman v. State Personn[e]l Board* [(1983) 145 Cal.App.3d 395.]

"The Court finds no abuse of discretion on the part of the Board in terminating the employment of Petitioner. The Writ is denied."

 Generally, in reviewing an administrative mandamus order, the determination of the penalty by the administrative body will not be disturbed unless there has been an abuse of discretion. (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 217 [124 Cal.Rptr. 14, 539 P.2d 774].) The overriding consideration in determining whether an abuse of discretion occurred in the context of public employee discipline is the "extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[h]arm to the public service.' " (*Id.* at p. 218.) The court may also consider the circumstances surrounding the misconduct and the likelihood of its recurrence. (*Ibid.*)

 Appellant contends the trial court and the Board refused to consider evidence that the alteration of the Valium-prescription was unlikely to recur, was stress related and, therefore, of a transitory, medical nature which would not affect appellant's future job performance.[3] To support this argument, appellant relies on the testimony presented below of Robert Flint, Ph.D., a clinical psychologist specializing in police stress who examined appellant and presented the opinion that the Valium prescription alteration was a "lapse of judgment" that "sounds like a once-in-a-lifetime event up to that time." Dr. Flint testified that when people experience a serious life-threatening event or a major loss, it is common for the individual to experience the same emotions or become "a little crazy" on or about the anniversary of the event. Dr. Flint then hypothesized the altered Valium prescription was part of this "anniversary reaction" due to an incident which occurred in July of 1979 in which an unknown assailant repeatedly shot at appellant but was never apprehended. Appellant relies on *Blake v. State Personnel Board* (1972) 25 Cal.App.3d 541 [102 Cal.Rptr. 50]; *Yancey v. State Personnel Bd.* (1985) 167 Cal.App.3d 478 [213 Cal.Rptr. 634] and *Johnstone v. City of Daly City* (1958) 156 Cal.App.2d 506 [319 P.2d 756].

In *Blake v. State Personnel Board, supra,* 25 Cal.App.3d 541, a supervising deputy labor commissioner was dismissed from state employment for discourteous treatment of employees in violation of Government Code section 19572, subdivision (m) after a hearing before the State Personnel Board. The charge was based on an incident in which the commissioner

---

[3]There is no basis in the record to support appellant's contention that the triers of fact in this case "refused to consider" this evidence, only that it was not persuasive.

pointed a gun at two fellow employees and warned them to stay away from a female employee with whom he had a romantic attachment. The incident occurred during off-duty hours while all such employees were attending a work-related convention. A petition for a peremptory writ of mandate for reinstatement was denied. The Fourth District Court of Appeal reversed holding the commissioner's off-duty conduct was punishable but found the penalty of dismissal was excessive, noting the commissioner's long record of exemplary service, the fact the conduct occurred after those involved had been drinking alcohol and the commissioner promptly apologized to his fellow employees. There was no direct testimony from the two male employees indicating their work relationship with the female employee was affected and, at the hearing, the commissioner testified his relationship with the female employee had terminated, he no longer owned a gun and gave assurance the incident would not recur. (*Id.* at pp. 553-554.)

The facts of the instant case are easily distinguishable from those in *Blake*. In the present case, appellant gave the altered prescription to the pharmacist while in uniform and the pharmacist testified that while he had doubts about the prescription when it was presented, he filled the prescription based on a good faith belief in the reputation and trustworthiness of police officers. Although appellant admitted his wrongdoing when confronted by his treating physician, appellant did not come forward and attempt to rectify the situation until confronted.

In *Yancey* v. *State Personnel Bd., supra,* 167 Cal.App.3d 478, the trial court denied a former correctional officer's petition for a writ of administrative mandamus to compel the State Personnel Board to vacate its decision terminating his employment. The employment of the officer was terminated after he had been found off duty wearing female underclothing based upon the testimony of a veteran correctional officer and psychiatrist to the effect that due to the incident petitioner was a likely target for blackmail by inmates and distrust by other officers, that some inmates might assault petitioner or attempt to manipulate him and other officers would resent working with him. The First District Court of Appeal reversed, holding there was no substantial evidence to substantiate the opinions of the psychiatrist and veteran officer and the penalty imposed by the board was grossly excessive relative to the officer's conduct, especially since he committed no crime, was not willfully disobedient, did not violate any rule or regulation of the department, was not dishonest or insubordinate, but was completely cooperative and candid in his disclosures. (*Id.* at pp. 486-487.) The court found no basis for imposing punishment due to medical reasons. (*Id.* at p. 486.) However, in the case presently before us, appellant committed a criminal act, was dishonest, was not completely cooperative and candid in his disclosures and the record does not establish the reason for appellant's behavior was solely medical in nature.

In *Johnstone* v. *City of Daly City, supra,* 156 Cal.App.2d 506, Johnstone was discharged by the city council for investigating a personal friend without asking to be relieved from the investigation, associating with persons whom he knew were being investigated, and refusing to cooperate with the district attorney and police department. The superior court denied his petition for a writ of mandamus and his motion for new trial. The First District Court of Appeal held the petitioner was discharged from his position on charges that were based on "suspicion, conjecture and hearsay, and not on substantial evidence necessary to warrant his discharge." (*Id.* at p. 516.) In the instant case, the charges are not based on suspicion and conjecture but on substantial evidence and an admission by appellant that he altered the Valium prescription.

In *Wilson* v. *State Personnel Bd.* (1976) 58 Cal.App.3d 865 [130 Cal.Rptr. 292], the trial court issued a writ of mandate commanding the State Personnel Board to set aside and reconsider its decision affirming the dismissal from employment of a Department of Fish and Game warden. The trial court ruled that certain of the findings of misconduct could not be sustained as they were based on the testimony of a witness, petitioner's immediate superior, whose lack of credibility was evident on the face of the record. The trial court also held that as to findings that petitioner was guilty of inefficiency and filing late citations, there was no evidence any regulation had been violated thereby and the hearing officer had erred in not allowing petitioner to introduce evidence showing other wardens also filed citations late. Finally, the trial court ruled the valid findings of the board relating to petitioner's neglected duty to make honest reports and misuse of state property were not sufficient to justify the harsh penalty of dismissal. The Third District Court of Appeal reversed and reinstated all the findings of the board and directed the trial court to deny the writ. Among other things, the court held an incident when petitioner falsely reported eight hours of overtime, entitling him to take a full day off at a later time and be paid for it and also obtaining the maximum allowable cash expense allowance for that day, was sufficient of itself to support a disciplinary discharge. (*Id.* at p. 882.) The court explained this incident amounted to "pure and simple cheating." (*Ibid.*) The court further explained: "The position of fish and game warden is by its very nature such that very little direct supervision over the performance of duties can be maintained. The Fish and Game Department must of necessity not only place full trust and confidence in its wardens, but also must totally rely upon the accuracy and honesty of their oral and written reports as to their use of state time and equipment. Any breach of trust must therefore be looked upon with deep concern. Dishonesty in such matters of public trust is intolerable." (*Ibid.*)

In *Ackerman* v. *State Personnel Bd.* (1983) 145 Cal.App.3d 395 [193 Cal.Rptr. 190], a Highway Patrol officer with over 15 years of service was

dismissed on grounds of dishonesty and misuse of state property after it was established the officer misappropriated state-owned motorcycle parts and installed them on his privately owned motorcycle. During a subsequent investigation he denied he had done so. In addition, the officer had used a dealer's name to order motorcycle parts from a wholesaler without the dealer's consent. The superior court granted a peremptory writ of mandamus compelling the State Personnel Board to reconsider the dismissal. The First District Court of Appeal reversed and held the State Personnel Board did not abuse its discretion in determining that dismissal was the appropriate penalty to be imposed on the officer in light of his dishonest conduct. The court noted the State Personnel Board had determined a "police officer must be held to a higher standard than other employees. A police officer is expected to tell the truth." (*Id.* at pp. 398-399.) The officer's dishonesty warranted his dismissal. The appellate court reasoned the officer's admitted theft and subsequent lie not only discredited him but the entire agency and stated "[u]nlawful activity by a police officer warrants dismissal. [Citations.] Further, 'honesty is not considered an isolated or transient behavioral act; it is more of a continuing trait of character.' [Citation.]" (*Id.* at p. 399.)

In our view, the instant case is analogous to *Ackerman.* The position of appellant as a deputy sheriff, like that of a California Highway Patrol officer, is one involving the public trust and the Department, due to the lack of direct supervision over its employees, must totally rely on the accuracy and honesty of the employee and the employee's reports. (*Id.* at p. 400.)

As was stated in *Ackerman*: "It may be that others might have decided that a term suspension rather than discharge was the appropriate sanction but '[t]he fact that reasonable minds may differ as to the propriety of the penalty imposed [will fortify] the conclusion that the administrative body acted within the area of discretion.' (*Stanton* v. *State Personnel Bd.* (1980) 105 Cal.App.3d 729, 744 . . . .) 'Discretion is abused when the action exceeds the bound[s] of reason.' (*Ng* v. *State Personnel Bd.* (1977) 68 Cal.App.3d 600, 605 . . . .) Under the circumstances here, appellant's discharge did not 'exceed the bounds of reason.' " (*Id.* at p. 401.)

## II.

In upholding the Department's discharge of appellant, the Board found "the Appellant's conduct in altering a prescription and filling that prescription while in uniform on or about July 10, 1980, constitutes dishonesty within the meaning of subsection (f) of Section 2.56.260 of the Tuolumne County Code, and that Appellant's conduct in altering and filling a Valium prescription on or about July 10, 1980 is a failure of good behavior that

causes discredit to the County within the meaning of subsection (o) of Section 2.56.260 of the Tuolumne County Code."

Tuolumne County Ordinance No. 2.56.260 provides in pertinent part: "2.56.260. Causes for discipline. Any Tuolumne County employee who has a permanent status shall be subject to disciplinary action pursuant to 2.56.250 through 2.56.420. Cause of discipline shall include, but not be limited to, the following:

" . . . . . . . . . . . . . " . . . . .

"f. Dishonesty.

" . . . . . . . . . . . . . . " . . . . .

"o. Other failure of good behavior either during or outside of duty hours which is of such nature that it causes discredit to the county . . . ."

■ Appellant contends the Tuolumne County ordinance under which the appellant was disciplined is unconstitutionally vague as written and as applied.

■ The construction of a municipal ordinance is governed by the rules which govern construction of statutes. (*In re Yick Wo* (1885) 68 Cal. 294, 303-304 [9 P. 139], reversed on other grounds, 118 U.S. 356 [30 L.Ed. 220, 6 S.Ct. 1064].) (7) It is well established that a statute which mandates or forbids certain conduct in terms so vague that "men of common intelligence must necessarily guess at its meaning and differ as to its application," violates due process. (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126].)

The California Supreme Court, in a majority opinion authored by Justice Grodin, recently reviewed the "void for vagueness doctrine" in *Cranston* v. *City of Richmond* (1985) 40 Cal.3d 755 [221 Cal.Rptr. 779, 710 P.2d 845]: " 'Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' [Citations.]" (*Id.* at p. 763.)

The court further explained that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand. (*Ibid.*) "This is so because '[v]oid for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged.' [Citations.] For this reason, '[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness.' [Citation.]" (*Id.* at p. 764.)

In *Cranston*, Eric Cranston was discharged from his job as a City of Richmond police officer for "conduct unbecoming an employee of the City Service" when, though previously warned about his driving habits and notified his conduct was being closely observed, he drove his car with inoperative lights in the middle of the night and led fellow police officers on a "wild chase" over wet and slippery streets at speeds up to 95 miles per hour. (*Id.* at p. 760.)

The California Supreme Court construed the phrase "conduct unbecoming" a city police officer to refer only to conduct which indicates a lack of fitness to perform the functions of a police officer. Thus construed, the high court stated the phrase provides a sufficiently specific standard against which the conduct of a police officer in a particular case can be judged. Police officers will normally be able to determine what kind of conduct indicates unfitness to perform the functions of a police officer. (*Id.* at p. 769.) The court also held Cranston's conduct so clearly fell within the description of "conduct unbecoming" a police officer that the phrase's application to Cranston was constitutionally valid. The court concluded Cranston's conduct was not only reckless but clearly violated the very laws which, as a traffic officer, it was his job to enforce. (*Ibid.*)

In *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375], a case relied upon by appellant, a public school teacher challenged the constitutionality of former Education Code section 13202 which empowered the State Board of Education to revoke a teacher's teaching certificate for "immoral or unprofessional conduct" and conduct "involving moral turpitude." The California Supreme Court held that, although "terms such as 'immoral,' 'unprofessional,' and 'moral turpitude' constitute only lingual abstractions" when considered in isolation, these terms are nonetheless sufficiently specific when "applied to a specific occupation and given content by reference to fitness for the performance of that vocation." (*Id.* at p. 239.) Having construed the general terms in former Education Code section 13202 to refer only to conduct which indicates an

unfitness to teach, the California Supreme Court held "[t]his construction gives section 13202 the required specificity. Teachers, particularly in the light of their professional expertise, will normally be able to determine what kind of conduct indicates unfitness to teach." (*Id.* at p. 233.)

*Perea* v. *Fales* (1974) 39 Cal.App.3d 939 [114 Cal.Rptr. 808], another case relied upon by appellant, involved a police officer who was suspended for driving 50 miles per hour in a residential neighborhood while off duty, on the ground that his conduct constituted "conduct unbecoming an officer of the Redwood City Police Department." Relying on *Morrison,* the First District Court of Appeal held: "[T]he regulations applied to appellant to justify his suspension must not be so vague as to give no guidance as to what conduct is permitted and what is prohibited. . . . The expression 'conduct unbecoming an officer' fails, on its face, to provide a standard. However, the required certainty may be provided by the common knowledge of members of the particular vocation when the regulation does not itself contain specific standards; it may be that police officers 'will normally be able to determine what kind of conduct indicates unfitness' to work in law enforcement." (*Id.* at p. 942.)

In *Orlandi* v. *State Personnel Bd.* (1968) 263 Cal.App.2d 32 [69 Cal.Rptr. 177], a California Highway Patrol officer was dismissed from his position as a state traffic officer for dishonesty, willful disobedience and "[o]ther failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment." It was determined the officer in question had "fixed" a ticket for a business associate and later obstructed the investigation of the matter conducted by his superiors. (*Id.* at pp. 35-36.) The Third District Court of Appeal held the quoted language, appearing in Government Code section 19572, subdivision (t), was clear and unambiguous. (*Id.* at p. 36.) The court further held that the officer's conduct in fixing the ticket and obstructing the investigation was "clearly . . . the sort of behavior which would cause discredit to the Highway Patrol and to the State Traffic Officer." (*Id.* at p. 37.)

 The language of subsection (o) of Tuolumne County Ordinance No. 2.56.260 is nearly identical to former Government Code section 19572, subdivision (t) which now reads: "(t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to the appointing authority or the person's employment."

This language is clear on its face and refers to conduct which would reflect discredit on the employing agency or the position held by the person engaging in such conduct. (*Orlandi* v. *State Personnel Bd., supra,* 263 Cal.App.2d at pp. 36-37.) Thus, deputy sheriffs in the position of appellant "will normally

be able to determine what kind of conduct indicates [other failure of good behavior causing discredit to the county]." (*Morrison* v. *State Board of Education, supra,* 1 Cal.3d at p. 233.)

In the instant case, appellant was a law enforcement officer who altered a prescription for Valium and submitted that altered prescription to a pharmacist while in uniform. Appellant testified he later returned the unused portion of the prescription to the pharmacist out of a sense of guilt and he knew his conduct was "wrong." The pharmacist testified he initially filled the prescription in part due to the respect for the position of the law enforcement officer and never reported it but now realized it was his duty to report such an incident to law enforcement and would do so if the incident occurred again. Sheriff Wallace Beery testified as to the importance of credibility in a law enforcement officer, explaining that the people in Tuolumne County rely on the deputies to protect them, to arrest violators and their credibility is required in court testimony. He also testified honesty is a necessary trait in the law enforcement field and that unlawful activity by a deputy sheriff would warrant termination. Not only did appellant's conduct violate the public trust but violated Business and Professions Code section 4390. Thus, it appears both specificity and nexus have been shown. Appellant cannot complain of the vagueness of the section in question since the conduct with which he is charged falls clearly within its bounds. (*Cranston* v. *City of Richmond, supra,* 40 Cal.3d at p. 764.)

### III.

Appellant contends the grounds cited for termination in this case were merely a pretext masking the Department's desire to eliminate him because of his alleged physical disability, namely, migraine headaches which caused a certain degree of absenteeism. This argument was presented to the Board at the de novo hearing and was rejected and was again rejected by the trial court exercising its independent judgment.

Government Code section 12940 provides in pertinent part: "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, . . .

"(a) For an employer, because of . . . physical handicap, medical condition . . . to refuse to hire or . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions or privileges of employment.

"(1) Nothing in this part shall prohibit an employer from refusing to hire or discharging a physically handicapped employee, or subject an employer

to any legal liability resulting from the refusal to employ or the discharge of a physically handicapped employee, where the employee, because of his or her physical handicap, is unable to perform his or her duties, or cannot perform those duties in a manner which would not endanger his or her health or safety or the health and safety of others.

"(2) Nothing in this part shall prohibit an employer from refusing to hire or discharging an employee who, because of the employee's medical condition, is unable to perform his or her duties, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health or safety of others. Nothing in this part shall subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee who, because of the employee's medical condition, is unable to perform his or her duties, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health or safety of others."

A physical handicap for the purpose of Government Code section 12940, has been defined as "a condition of the body which has [the] disabling effect [of making achievement unusually difficult]." (*American National Ins. Co. v. Fair Employment & Housing Com.* (1982) 32 Cal.3d 603, 609 [186 Cal.Rptr. 345, 651 P.2d 1151].) ▮ Said section was "designed to prevent employers from acting arbitrarily against physical condition that . . . may present no current job disability or job-related health risk." (*Id.* at p. 610.)

▮ Appellant argues that migraine headaches should be considered a "physical handicap" subject to protection under Government Code section 12940 on the basis of the testimony of Dr. Flint who considered appellant temporarily and partially disabled due to the headaches, of the testimony of Deputy James Murphy who witnessed the disabling effects of one of appellant's headaches, and a medical report from Dr. William Curtin.

Appellant testified that in 1982, a few weeks after Assistant Sheriff Hoback started working in the Department, Hoback warned appellant he would try to find a reason to terminate appellant. Deputy Sheriff Hal Channell testified he overheard Hoback's threat. Deputy Sheriff William McClanahan testified he had heard a rumor appellant would be terminated if his migraines continued. Appellant also testified he was threatened with termination on November 16, 1983, after he missed a management meeting. It was appellant's testimony that Sheriff Beery warned him that if appellant could not control his headaches he would be "let go." The results of appellant's polygraph examination conducted by a private investigator and polygraph specialist were admitted after an objection to their admissibility was withdrawn. The sole substantive question covered on the polygraph examination

was whether or not Sheriff Beery stated to appellant that appellant must control his headaches or be "let go." The results of the polygraph examination indicated appellant's truthfulness as to this matter.

Sheriff Beery denied he had ever suggested appellant would be terminated due to his headaches or for taking an excessive amount of sick leave. Sheriff Beery testified the matter was raised regarding a letter of recommendation appellant sought for a job opening in Stanislaus County. The sheriff denied any consideration of appellant's involvement with the deputies' association, his use of sick leave or his migraine headaches in deciding to terminate appellant.

Appellant acknowledges the existence of Sheriff Beery's testimony but insists there was a "complete lack of any contrary testimony on the issue of pretextual firing" and "nothing was offered by way of explanation or rebuttal to the theories" of appellant. Appellant contends the trial court erred in applying the "abuse of discretion" standard relying on *Short* v. *Nevada Joint Union High School Dist.* (1985) 163 Cal.App.3d 1087 [210 Cal.Rptr. 297], which held that once an employee plaintiff presents a prima facie showing that his termination was motivated by an improper purpose, the burden of proof shifted to the agency to establish the elimination would have occurred absent the improper motivation. (*Id.* at pp. 1099, 1100.) However, in *Short,* evidence was presented at trial which suggested both legitimate and improper reasons for termination of plaintiff. The school district had eliminated the security department including plaintiff's position citing financial reasons as its sole motivation. The trial court granted a *directed verdict* as to plaintiff's first cause of action for breach of contract. The Third District Court of Appeal reversed the judgment with regard to the directed verdict as to the breach of contract cause of action and held the trial court erred in concluding the evidence presented no substantial conflicts and removing the issue from jury consideration. Once plaintiff presented a prima facie showing that staff unhappiness with his performance influenced his discharge, the school district had a burden to show the plaintiff's entire security department would have been eliminated for budgetary reasons even if plaintiff's performance had been satisfactory to all concerned.

The question in *Short* was whether plaintiff had presented sufficient evidence to entitle him to have a jury decide the issue. (*Ibid.*) In the instant case, appellant presented evidence to raise an inference in his favor that he had been discharged for an improper motive. It became a question of fact as to whether appellant's contention or Sheriff Beery's explanation regarding the termination was to be believed by the trier of fact. As respondents point out, two independent triers of fact reviewed appellant's allegations and evidence on this issue and rejected appellant's theory. Substantial evidence

exists in the record to support a conclusion appellant was not terminated for an improper purpose. Therefore, appellant's contention in this regard must fail.

## IV.

 Appellant sought to introduce evidence tending to prove the penalty imposed was discriminatory. This offer of proof was rejected on the grounds of relevancy:

"[Counsel for appellant]: . . . I'll make an offer of proof for the record. Lt. Wolfgang lied on the stand on two or three occasions and was never the subject of punitive action after lying under oath.

"Now, the Petitioner in this case is charged with dishonesty, and the County takes the position that an act of dishonesty is absolutely reprehensible and impossible to employ an individual committing an act of dishonesty.

"Yet, the main witness against this Petitioner in the trial lied under oath on several occasions and had no punitive action taken against him.

" . . . . . . . . . . . . . . . . . . .

". . . Sgt. Nicolini was terminated for dishonesty and we're trying to show that he was discriminated against and treated more harshly than anybody else would have, and there's clear evidence in the record of lies under oath, we're reflecting upon the credibility of a lieutenant in the department and a witness against this Petitioner, and nothing was ever done about it, I think that that speaks to the question of, number one, whether Sgt. Nicolini is capable of resuming his duties with the department, and number two, whether or not the department was discriminating against him in proceedings with this extremely harsh action against him for something that occurred three years prior to the hearing on the matter.

"THE COURT: Well, Counsel, I'm going to sustain the objection [of relevance] as it relates to other incidents involving other members of the Sheriff's Office and so forth."

Appellant contends the trial court's ruling deprived appellant of the opportunity to present evidence in support of his defense of discriminatory punishment. As the argument goes, the trial court's ruling was an abuse of discretion that was highly prejudicial in depriving appellant of a crucial defense. Appellant cites *Robinson* v. *State Personnel Bd.* (1979) 97 Cal.App.3d 994 [159

Cal.Rptr. 222] in which the State Personnel Board's failure to make findings on a crucial defense necessitated reversal and remand.

Appellant's argument in this regard is specious. It was appellant's contention below that the allegation of perjury by Lieutenant Wolfgang was found to be true or adjudicated in some manner, and assuming it were true, a failure to punish Lieutenant Wolfgang by termination by the time of the court hearing created a defense of discriminatory treatment as to appellant. There are several "windows of vulnerability" in appellant's argument. The first of which is that a mere allegation of perjury does not equal an adjudication of the fact of whether or not perjury occurred. There was no such adjudication here. Secondly, assuming arguendo Lieutenant Wolfgang was "dishonest" in his testimony, appellant offered no proof that these two dissimilar acts of "dishonesty" must be treated in an identical manner. Finally, one incident of disparate treatment, even accepting as true appellant's allegations regarding Lieutenant Wolfgang's testimony, does not establish a case of discrimination. ■ There must be a showing the persons are "similarly circumstanced" before the law requires they be treated alike. (*Royster Guano Co.* v. *Virginia* (1920) 253 U.S. 412, 415 [64 L.Ed. 989, 990-991, 40 S.Ct. 560]; *Tigner* v. *Texas* (1940) 310 U.S. 141, 147 [84 L.Ed. 1124, 1128, 60 S.Ct. 879, 130 A.L.R. 1321].) Appellant failed to do so.

■ The trial court has wide discretion in excluding evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time. (Evid. Code, § 352.) The court's ruling did not constitute an abuse of discretion.

## V.

■ Appellant admitted to altering the Valium prescription in July of 1980. Appellant was notified on or about April 15, 1983, that disciplinary proceedings were being initiated due to that incident. Appellant complains the remoteness of the event prompting the discipline in this case amounts to a denial of due process. Respondents' counterargument is subtly entitled "Almost Getting Away With It Is No Defense." Respondents argue that as a law enforcement officer, appellant had a continuing duty to disclose the facts concerning this matter to his superiors, citing *Szmaciarz* v. *State Personnel Bd.* (1978) 79 Cal.App.3d 904, 915 [145 Cal.Rptr. 396]. The case of *Szmaciarz* involved an investigation into a Department of Corrections employee's involvement in marijuana traffic with prison inmates. Investigators warned Szmaciarz, a correctional officer, that he would be required to answer questions under pain of dismissal and he admitted to them he occasionally used marijuana on social occasions and had once inadvertently brought three marijuana cigarettes into the prison in which he was employed.

At the formal hearing he repeated his admissions under protest, having first argued that possible self-incrimination entitled him not to answer the questions put to him. He was suspended for five months without pay and his petition for writ of mandate was denied by the trial court. The First District Court of Appeal affirmed, holding that, because his possession and use of marijuana involved his official duties, he was not entitled, at the formal hearing, to assert his privilege against self-incrimination, even though such testimony would be inadmissible in any subsequent criminal prosecution. The court reasoned peace officers are regarded as holding a position of confidence, and as a peace officer, appellant had a duty to cooperate with the investigation being conducted by the Department of Corrections. (*Ibid.*)

We note the three-year statute of limitations had not yet run on appellant's admitted violation of Business and Professions Code section 4390 at the time he was notified the July 1980 incident would be used as a charge against him in these disciplinary proceedings. The Legislature has determined that should criminal proceedings be initiated on this charge within three years of its occurrence, no due process violation would occur and the purpose and intent of the criminal statute of limitations would have been met. (See *People v. Zamora* (1976) 18 Cal.3d 538, 547 [134 Cal.Rptr. 784, 557 P.2d 75].) That being the case, we cannot conclude the bringing of these charges violated appellant's right to due process. The Department brought the charges immediately after learning of them. Furthermore, all parties concerned in that incident were available and testified at the administrative hearing and appellant has not established he was prejudiced in any way by the delay.

The judgment is affirmed.

Best, J., and Vartabedian, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.