[Civ. No. 22834. Third Dist. Jan. 23, 1985.]

KENNITH L. SHORT, Plaintiff and Appellant, v.
NEVADA JOINT UNION HIGH SCHOOL DISTRICT et al.,
Defendants and Respondents.

1090

## COUNSEL

William H. Ford III, Carroll, Burdick & McDonough and Gary M. Messing for Plaintiff and Appellant.

Porter, Scott, Weiberg & Delehant, A. Irving Scott, James K. Mirabell, Schneider, Collison & Lange and Larry G. Sage for Defendants and Respondents.

## OPINION

**SIMS, J.**—Plaintiff Kennith L. Short, formerly chief of security at Nevada Union High School, brought suit after the Nevada Joint Union High School District (District) eliminated the high school's security department, an action which effectively terminated plaintiff's employment. Plaintiff claimed the elimination of the security department was a subterfuge undertaken to mask the District's true purpose, which was to get rid of plaintiff.

Plaintiff appeals from a judgment in favor of defendants District and school administrators Theis Murphy, Bruce Griffith, and Kermit Young, entered after the trial court granted defendants' motions for nonsuit (Code Civ. Proc., § 581c) on plaintiff's second cause of action for intentional interference with contractual relations and for directed verdict as to plaintiff's first cause of action for breach of contract.

We conclude that plaintiff's evidence of breach of contract was sufficient to establish a prima facie case of "dual motive" discharge, i.e., that permissible and impermissible reasons influenced the District's decision to eliminate the security department. We hold that the District's decision is unlawful if it would not have been made but for impermissible reasons. We hold further that once plaintiff established his prima facie case, the burden of persuasion shifted to the District to prove the decision would have been made even in the absence of impermissible reasons. Because we conclude defendant District failed to rebut conclusively plaintiff's showing, we reverse the judgment as to the District.

We also conclude plaintiff presented no evidence that defendants Murphy, Griffith and Young interfered with his contract with the District. We therefore affirm the judgment as to the individual defendants.

FACTUAL AND PROCEDURAL BACKGROUND

A detailed factual summary is necessary to this appeal.

Plaintiff, with over 20 years experience in law enforcement, was asked in 1975 to set up a security department at Nevada Union High School (hereafter the high school or NUHS). Plaintiff did so and assumed the position of chief of security. In 1978 defendant Murphy became principal of the high school and in that capacity was plaintiff's supervisor. In June of 1978 Murphy rated plaintiff's job performance as satisfactory or better, although she disagreed with the attitude plaintiff sometimes exhibited toward students.

During Murphy's tenure as principal of NUHS, plaintiff was reduced from full- to half-time status, working in the mornings while another security officer was hired to work afternoons. Murphy disagreed with this change; she thought a single full-time officer would be preferable to two part-time officers. She recommended to the school board (board) that plaintiff be returned to full-time status as he was the senior officer. The board agreed, and in May of 1979 plaintiff was returned to full-time status.

Defendant Young was a vice principal at NUHS. In January of 1980 plaintiff informed Murphy of a "personal problem" of a sexual nature between a female student and defendant Young. Murphy had previously dealt with the problem and believed it had been solved by the time plaintiff approached her with it. Murphy spoke to Young about the allegation.

Murphy believed that any further investigation into the matter should be performed by the Nevada County District Attorney's office rather than by plaintiff, and she so informed plaintiff by memo dated January 28, 1980. The memo directed plaintiff not to investigate staff members without obtaining Murphy's authorization. Murphy testified she felt the district attorney had the professional expertise needed to perform such investigations.

However, plaintiff did not share his supervisor's view; he continued his own investigation of the incident. Plaintiff also appealed Murphy's directive to George Bryant, the district superintendent, who modified the directive to require his own, rather than Murphy's, prior approval for investigations of staff.

In the fall of 1980, plaintiff filed a report with the Commission for Teacher Preparation and Licensing (Ed. Code, § 44210 et seq.), alleging that defendant Griffith, another vice principal, had used excessive force against a disadvantaged student. Plaintiff's filing this report on his own initiative made Griffith angry and contributed to the latter's view that plaintiff should

be fired. Griffith testified he had met with Superintendent Bryant and had told him that plaintiff should be fired "for cause" for being insubordinate.

When school resumed in September 1980 Murphy, Griffith and Young held a meeting with plaintiff. At this meeting, Murphy presented plaintiff a revised job description which forbade him to investigate staff and administrators without prior approval from Murphy.

Murphy explained that plaintiff's role as security guard was to be highly visible on campus and to serve as a deterrent to crime; "deep" investigations, on the other hand, were to be carried out by the sheriff's department or the district attorney. Under plaintiff's new job description he remained free to bring the sheriff's department into a case on his own initiative if he felt it was warranted.

Young testified that in the meeting, plaintiff refused Murphy's instruction not to use students as informants (snitches) against other students. Young testified that "Well, for one, we talked about the Snitch System. He [plaintiff] said, 'You're going'—basically—'You're going to have to look the other way because I'm going to continue doing things the way I want to do them.'" Young felt plaintiff had been insubordinate in refusing Murphy's instruction not to use student informants.

Sometime between September and November 1980, the county counsel instructed Murphy that if plaintiff was to be fired for cause, appropriate documentation would have to appear in his file. Beginning in November, Murphy began sending memoranda critical of plaintiff's job performance to Deputy County Counsel Larry Sage. Sage would review the documents to see whether they were "sufficiently worded legally"; thereafter, the documents would be placed in plaintiff's personnel file. Between 18 and 22 of such documents were placed in plaintiff's file between September and November.

By November 1980, Murphy, Griffith, and Young were all of the view that plaintiff's insubordination justified his termination "for cause." They discussed terminating plaintiff for cause with Deputy County Counsel Sage, and Griffith and Young strongly advocated that plaintiff be fired for cause.

Sage testified that at a board meeting he had overheard both Griffith and Young say, in the presence of the board, words to the effect, "I can't function here if [plaintiff is] going to continue functioning the way he is, make a choice." Sage interpreted the statement to mean that plaintiff's conduct had to be corrected, not that plaintiff should be fired.

At the November 1980 school board meeting, the board, in closed session, discussed two options for dismissing plaintiff from his position—termination "for cause" for insubordination, and termination because of lack of funds. Deputy County Counsel Sage recommended use of the "budget" or "lack of funds" option.

At the November 1980 board meeting, the board decided to place the elimination of the security department on the public agenda of the December 1, 1980, meeting. At the December meeting the board voted to eliminate the security department,[1] terminating plaintiff and his assistant effective January 18, 1981. The only grounds cited were lack of work and lack of funds.

School board member Randy Wall testified without contradiction that at no time did the board discuss with plaintiff the impending elimination of his job. Wall explained that the board never talks to personnel who are about to be laid off. Wall testified that several students' allegations against Griffith and Young came to the attention of the board and that the board was of the view that the incidents were being investigated by the proper authorities. According to Wall, it was the board's view that the District's internal security chief was not one of those proper authorities.

During the summer and fall of 1980, when documentation of plaintiff's insubordination was accumulating in his file, the District faced a fiscal crisis. Tyrus Blount, then business manager for the District, testified without contradiction that the District had been embroiled in fiscal difficulties ever since the passage of Proposition 13 in 1978. Blount explained that the District was experiencing growth in student enrollment and could not discharge any of its teaching staff in order to meet budget requirements; consequently, nonteaching areas were targeted for severe cuts. On August 1, 1980, Blount sent a letter to the school board warning of the fiscal crisis to be expected in the coming school year.

Between August and November 1980, cuts were made in various nonacademic services. In September, the board imposed a bus transportation fee but in October angry parents forced a "deferral" of the fees. The board made further cuts and decided not to fill a counseling position which had already been budgeted.

At the December board meeting, business manager Blount described the District's fiscal outlook as very bleak. At trial, Blount testified that follow-

---

[1]The Education Code provides that the governing board of a school district may establish and operate a security department, under the supervision of a chief of security, and may employ personnel as may be necessary to ensure the safety of school personnel and pupils, and to secure the real and personal property of the school district. (§ 39670.) Establishment of a security department is permissive, not mandatory. (§§ 75, 39670.)

ing the December meeting it became necessary to make further cuts, including the layoff of all employees in the transportation agency (40 to 50 persons).

On September 14, 1981, plaintiff filed this action, alleging breach of contract, interference with contractual relations, and defamation. Plaintiff sought reinstatement,[2] and damages.

On February 3, 1983, following presentation of plaintiff's evidence, the trial court granted a motion for nonsuit on the second cause of action (interference with contractual relations). Subsequently, the court granted a motion for a directed verdict on plaintiff's first cause of action for breach of contract explaining that "the Court feels that there is no substantial conflicts [*sic*] in the evidence which is legally sufficient to go to the jury which established that the Nevada Joint Union High School District eliminated Security Services and the employment of Mr. Short *for reasons other than budgetary considerations.*" (Italics added.)

Plaintiff voluntarily dismissed the defamation causes of action and judgment in favor of defendants was entered. Plaintiff appeals.

DISCUSSION

I

We first consider the trial court's entry of a directed verdict on plaintiff's first cause of action against defendant District for breach of contract.

■ A trial court's limited power to enter a directed verdict is well-established. "A directed verdict may be granted against a plaintiff '. . . "only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, . . . indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given." [Cita-

---

[2]Plaintiff's complaint contained a prayer for reinstatement in his former position. We presume plaintiff initially sought this relief by way of writ of mandate. (Code Civ. Proc., § 1085; see, e.g., *Wellbaum* v. *Oakdale Joint Union High School Dist.* (1977) 70 Cal.App.3d 93, 96-97 [138 Cal.Rptr. 553]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 73, p. 3849.) However, it appears from the record and the briefs on appeal that plaintiff at trial abandoned his claim for equitable relief and treated the claim as one solely for damages, a remedy that entitled him to try his case to a jury. (See, e.g., *Monroe* v. *Oakland Unified School Dist.* (1981) 114 Cal.App.3d 804, 806-807 [170 Cal.Rptr. 867]; *Adler* v. *Los Angeles Unified School Dist.* (1979) 98 Cal.App.3d 280, 285, 286-287 [159 Cal.Rptr. 528].) We treat the claim as one at law for damages.

tions.] *Unless it can be said as a matter of law . . . no other reasonable conclusion is legally deductible from the evidence . . . the trial court is not justified in taking the case from the jury.'* (Italics added.) *(Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768]; accord, *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 745 [87 Cal.Rptr. 376, 470 P.2d 360]; *Walker* v. *Northern San Diego County Hospital Dist.,* [1982] 135 Cal.App.3d 896, 899-900 [185 Cal.Rptr. 617].)" *(Hilliard* v. *A. H. Robins Co.* (1983) 148 Cal.App.3d 374, 395 [196 Cal.Rptr. 117].)

■■■■■ It was stipulated at trial, and correctly so, that for purposes of this case, the terms of plaintiff's employment contract were set forth in provisions of the Education Code.[3] (See *Frates* v. *Burnett* (1970) 9 Cal.App.3d 63, 70 [87 Cal.Rptr. 731].) (All statutory references are to the Education Code unless otherwise indicated.) We begin with an overview of those provisions.

Plaintiff was a permanent classified employee as defined by the Education Code. (§ 45100 et seq.) Any employee designated as a permanent employee shall be subject to disciplinary action only for cause as prescribed by rule or regulation of the governing board. (§ 45113.) The governing board shall adopt rules of procedure for disciplinary proceedings which shall contain a provision for informing the employee by written notice of the specific charges against him, a statement of his right to a hearing on such charges, and the time within which such hearing may be requested which shall be not less than five days after service of the notice to the employee. *(Ibid.;* see also § 45116.) At a disciplinary hearing, the burden of proof is upon the governing board. (§ 45113.) Section 45101, subdivision (e) provides: " 'Disciplinary action' includes any action whereby an employee is deprived of any classification or any incident of any classification in which he has permanence, including dismissal, suspension, demotion, or any reassignment, without his voluntary consent, except a layoff for lack of work or lack of funds."

---

[3]Public high school employees have collective bargaining rights, including the right to enter into an employment agreement, pursuant to the Educational Employment Relations Act. (Stats. 1975, ch. 961, § 2, p. 2247, operative July 1, 1976, codified as Gov. Code, §§ 3540-3549.3; see *San Mateo City School Dist.* v. *Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 855 [191 Cal.Rptr. 800, 663 P.2d 523].) However, such an agreement cannot alter the Education Code's procedures, protections and entitlements for classified employees subject to layoff or discipline. *(San Mateo City School Dist., supra,* 33 Cal.3d at p. 866.) Classified employees of certain school districts may vote to have their public employees governed by a statutory "merit system." (See, e.g., §§ 45220, 45240-45320.) The "merit system" includes statutes related to discipline and layoffs. (See, e.g., §§ 45302, 45303.) However, nothing in the record suggests the District has elected to operate under the provisions of the merit system. (§ 45220 et seq.) Nor has either party suggested that the provisions of the merit system apply to this case. We therefore assume no merit system inclusion election has been made.

Plaintiff was terminated from his position without being charged with misconduct and without receiving the hearing required by statute for disciplinary action. (§§ 45113, 45116.) If the District terminated plaintiff's employment for disciplinary reasons, without demonstrating his misconduct according to the foregoing procedures, the District breached his contract of employment. (See *Frates* v. *Burnett, supra,* 9 Cal.App.3d at p. 70.) The District claims neither a showing of misconduct nor a hearing was necessary because plaintiff's termination was solely for lack of work and funds.

Classified employees may be laid off work for "lack of work" or "lack of funds." (§§ 45308, 45114.) When, as a result of a bona fide reduction or elimination of the service being performed by any department, classified employees shall be subject to layoff for lack of work or lack of funds, affected employees shall be given notice of layoff not less than 30 days prior to the effective date of layoff and informed of their displacement rights, if any, and of their reemployment rights. (§ 45117, subd. (b).) Plaintiff does not dispute that he got the requisite layoff notice.

Evidence presented at trial suggested that both legitimate financial concerns and the administrators' desire to rid themselves of an insubordinate employee contributed to the board's ultimate decision. Where both permissible and impermissible[4] reasons contribute to an employee's termination, is the termination valid? The question is not so easily answered.

■ Defendants focus solely on the permissible reason, the budget crisis. Defendants cite *California Sch. Employees Assn.* v. *Pasadena Unified Sch. Dist.* (1977) 71 Cal.App.3d 318 [139 Cal.Rptr. 633] for the undisputed proposition that a school district has wide discretion in setting its budget and that its budget decisions will not be disturbed by courts unless they are " 'fraudulent or so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law.' " (P. 322, quoting *City and County of S. F.* v. *Boyd* (1943) 22 Cal.2d 685, 690 [140 P.2d 666].) However, in that case the court expressly acknowledged the layoffs were not for disciplinary reasons. (P. 322.) The case therefore tendered no conflict between the budget discretion of a district and the statutory right of employees to be free of discipline unless the reasons therefor be demonstrated by notice and hearing. Here, in contrast, there is evidence that disciplinary as well as budgetary concerns informed the board's decision.

---

[4]We do not suggest that plaintiff's insubordinate conduct, as reflected in this record, was permissible as a matter of law. We simply note that under sections 45101 and 45113 the District could not deprive plaintiff of any incident of job classification, including dismissal, for disciplinary reasons without notice and a hearing at which the District had the burden of proving misconduct. The lack of requisite procedures makes plaintiff's dismissal for disciplinary reasons impermissible.

At issue here is the law of "dual motive" terminations, where both a permissible and an impermissible motive lead to a firing. In *Martori Brothers Distributors* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 721 [175 Cal.Rptr. 626, 631 P.2d 60] our Supreme Court identified three approaches courts have taken in "dual motive" cases. (P. 729.) Some cases have taken a hard line against firings due to anti-union bias, holding terminations invalid if such bias played *any* part in the decision to fire. (*Ibid.*) Other cases involving union membership have used a "dominant motive" test, examining whether union activity or legitimate business concerns was the principal motivation for the firing. In *Martori* the court adopted a third, "but-for" test, which invalidates a firing if it would not have occurred but for the impermissible reason.

In *Martori* the court explained the but-for test is essentially the same as that applied when it appears a public employee was dismissed on the basis both of dissatisfaction with his conduct and his exercise of constitutional rights. (See *Mt. Healthy City Board of Ed.* v. *Doyle* (1977) 429 U.S. 274, 283-287 [50 L.Ed.2d 471, 481-484, 97 S.Ct. 568]; *Miller* v. *Chico Unified School Dist.* (1979) 24 Cal.3d 703, 715, 722 [157 Cal.Rptr. 72, 597 P.2d 475]; *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575, 592-594 [100 Cal.Rptr. 16, 493 P.2d 480].) The *Martori* court observed that the National Labor Relations Board had recently adopted the "but-for" test (see *Wright Line, a Division of Wright Line, Inc.* (Aug. 27, 1980) 251 N.L.R.B. 1083 [105 L.R.R.M. 1169, 1171-1173]) and noted that the ALRB was statutorily directed to apply to NLRB precedent. (29 Cal.3d at p. 730.) Although we are not statutorily compelled to adopt the test in the instant case, we think it proper to do so. The test, after all, merely provides a convenient method for a factfinder to isolate the effects of permissible and impermissible reasons for a termination. It asks no more than, given only proper reasons, would the same decision have been made? Using this test, an employee learns the "true" reason for his termination. (See *Bekiaris* v. *Board of Education, supra,* 6 Cal.3d at p. 592.)

Under the but-for test a school district's broad budgetary discretion, as outlined in *California Sch. Employees Assn.* v. *Pasadena Unified Sch. Dist., supra,* 71 Cal.App.3d 318, is not limited; it is, however, confined to truly "budgetary" issues. A termination may be reasonable and within permissible discretion on strictly budgetary grounds, but if the actual decision to terminate would not have been made but for disciplinary reasons, the termination may not stand unless notice and hearing have been afforded the employee. Conversely, if the termination would have been made *on budgetary grounds alone,* it will be allowed to stand. This rule fully protects the legislative intent underlying section 45117, that classified school employees not be employed where there is no existent funding with which to

pay them. (See *California School Employees Assn.* v. *King City Union Elementary School Dist.* (1981) 116 Cal.App.3d 695, 700 [172 Cal.Rptr. 368].)

■ Crucial to the but-for test as the courts have applied it is the test's effect on the burden of proof. Once the employee has produced evidence sufficient to make a prima facie showing that an improper motive played a part in his termination, the burden of persuasion is shifted to the employer to explain its own conduct—to show that the termination would still have occurred even if the improper reason had not been present. (See *Mt. Healthy City Board of Ed.* v. *Doyle, supra,* 429 U.S. at p. 287 [50 L.Ed.2d at p. 484]; *Martori Brothers Distributors* v. *Agricultural Labor Relations Bd., supra,* 29 Cal.3d at pp. 730-731; see also *Fadhl* v. *City and County of San Francisco* (9th Cir. 1984) 741 F.2d 1163, 1166-1167, and cases cited.) This shifting of the burden is consistent with the longstanding policy requiring a party to prove facts peculiarly within its knowledge and competence. (See Cai. Law Revision Com. com. to Evid. Code, § 500, Deering's Ann. Evid. Code (1966 ed.) p. 10; see also *Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 119-120 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036]; *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 431 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1]; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 760 [63 Cal.Rptr. 689, 433 P.2d 697].) Needless to say, defendant District is in a far better position than plaintiff to show whether the security department would have been eliminated regardless of staff unhappiness with plaintiff's performance.

■ At trial, plaintiff obviously presented evidence showing that the administrators' unhappiness with his performance played a part in the board's decision to terminate him. The board was well aware of its administrator's dissatisfactions with plaintiff's performance. The fact that Deputy County Counsel Sage presented the board with "two options" for termination, discipline and budget, and recommended the board use the budget rationale, clearly allows an inference that the budget route was chosen as much because of difficulties with the other option as with its own intrinsic merit. Similarly, the fact that elimination of the security department occurred wholly outside the normal budget process allows an inference that it occurred in response to dissatisfaction with the way plaintiff was running the department. ■ " 'It is not incumbent upon a plaintiff to show that an inference in his favor is the only one that may be reasonably drawn from the evidence; he need only show that the material fact to be proved may logically and reasonably be inferred from the circumstantial evidence. (*Estate of Rowley* [1967] 257 Cal.App.2d 324, 334-335 [65 Cal.Rptr. 139], and cases cited therein; Witkin, Cal. Evidence (2d ed.) [§ 1133] pp. 1050-1051.) . . . The mere fact that other inferences adverse to plaintiff might be drawn does not render the inference favorable to plaintiff too conjectural or

speculative for consideration [by the jury].' (*Dimond* v. *Caterpillar Tractor Co.* (1976) 65 Cal.App.3d 173, 182 [134 Cal.Rptr. 895]; see also *Blank* v. *Coffin* (1942) 20 Cal.2d 457, 460-461 [126 P.2d 868] (opn. by Traynor, J.) ['If a jury can reasonably infer from these primary facts that the material fact exists, the party has introduced sufficient evidence to entitle him to have the jury decide the issue.']; *Greco* v. *Bucciconi Engineering Company* (W.D.Pa. 1967) 283 F.Supp. 978, 984, affd. (3d Cir. 1969) 407 F.2d 87; Witkin, Cal. Evidence, *supra,* § 1133, pp. 1050-1051.)" (*Campbell* v. *General Motors Corp., supra,* 32 Cal.3d at p. 121.)

■ Under the but-for test defendant District had to do more than merely present a proper justification for the dismissal. Once plaintiff presented a prima facie showing that staff unhappiness with his performance influenced his discharge, the District had the burden to show that the security department would have been chosen for elimination even had plaintiff's performance been satisfactory to all concerned. While it is possible to infer from the evidence that the board would have made the decision to eliminate security irrespective of staff discontent with plaintiff, that inference is by no means compelled. We cannot conclude, as the trial court did, that the evidence presented "no substantial conflicts" on this issue. Accordingly, the question was one for the jury to determine, and the trial court's removal of the issue from jury consideration was error. (*Hilliard* v. *A. H. Robins Co., supra,* 148 Cal.App.3d at p. 395.)

## II

■ Plaintiff contends that the trial court erred in granting a nonsuit on his second cause of action against all defendants for intentional interference with contractual relations.

■ "A motion for nonsuit is a procedural device which allows a defendant to challenge the sufficiency of plaintiff's evidence to submit the case to the jury. [Citation.] Because a grant of the motion serves to take a case from the jury's consideration, courts traditionally have taken a very restrictive view of the circumstances under which nonsuit is proper. The rule is that a trial court may not grant a defendant's motion for nonsuit if plaintiff's evidence would support a jury verdict in plaintiff's favor. [Citations.]" (*Campbell* v. *General Motors Corp., supra,* 32 Cal.3d at pp. 117-118; see *Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 838-839 [206 Cal.Rptr. 136, 686 P.2d 656].)

■ Plaintiff's second cause of action is predicated on the doctrine of civil conspiracy. ■ "As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damage on *all*

of them, regardless of whether they actually commit the tort themselves. (*Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 631 [102 Cal.Rptr. 815, 498 P.2d 1063].) 'The effect of charging . . . conspiratorial conduct is to implicate all . . . who agree to the plan to commit the wrong as well as those who actually carry it out. [Citations.]' (*Black* v. *Sullivan* (1975) 48 Cal.App.3d 557, 566 [122 Cal.Rptr. 119].)" (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 784 [157 Cal.Rptr. 392, 598 P.2d 45], italics in original.) However, the kernel of such an action is not the conspiracy itself. ██ "A complaint for civil conspiracy states a cause of action only when it alleges the commission of a civil wrong that causes damage. Though conspiracy may render additional parties liable for the wrong, the conspiracy itself is not actionable without a wrong. [Citations.]" (*Okun* v. *Superior Court* (1981) 29 Cal.3d 442, 454 [175 Cal.Rptr. 157, 629 P.2d 1369]; see *Manor Investment Co.* v. *F.W. Woolworth Co.* (1984) 159 Cal.App.3d 586, 594-596 [206 Cal.Rptr. 37]; *Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 64 [35 Cal.Rptr. 652].)

██ Here, plaintiff contends each administrator committed a civil wrong by inducing the District to breach its contract with plaintiff.

Defendants Murphy, Griffith and Young contend that their actions, if any, in interfering with plaintiff's contract are protected by a privilege afforded those in a confidential relationship with a party to the contract. (See *Environmental Planning & Information Council* v. *Superior Court* (1984) 36 Cal.3d 188, 193 [203 Cal.Rptr. 127, 680 P.2d 1086]; *Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33, 36-38 [112 P.2d 631].) We find it unnecessary to reach the question of privilege, however, because plaintiff has failed as a matter of law to show that any administrator interfered with the performance of his contract according to its terms.

As we have explained (see fn. 4, *ante*), the essence of plaintiff's cognizable breach of contract claim is not simply that his employment was terminated but rather that he was denied statutory rights to notice and hearing. (See §§ 45101, 45113.) However, plaintiff's evidence established that the administrators had consistently urged that these "termination" provisions of the contract be put into effect, i.e., that notice be given, cause be shown, and plaintiff's employment be terminated on the basis of insubordination. Such actions by the administrators are fully consistent with the terms of plaintiff's contract and do not run afoul of its terms. The administrators did not recommend that plaintiff be summarily terminated in the absence of cause, without notice or hearing, on the grounds of "lack of work and funds." ██ The tort of inducing breach of contract requires that one to be held liable must intend to induce a breach of contract; one who does not intend to induce a breach of contract is not liable. (*Seaman's Direct Buying*

*Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 765 [206 Cal.Rptr. 354, 686 P.2d 1158]; *Imperial Ice Co.* v. *Rossier, supra,* 18 Cal.2d at p. 37.) There is no evidence suggesting that the administrators intended that the District breach its contract with plaintiff by denying him statutory procedures. (See *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 767.)

The complaint alleges that all defendants, including the District, conspired to induce the breach of plaintiff's contract. However, as a party to the contract, the District "could not *induce* a breach of contract; if there was a breach [District] *breached* it . . . ." (*Mallard* v. *Boring* (1960) 182 Cal.App.2d 390, 394 [6 Cal.Rptr. 171] (italics in original); see *Manor Investment Co.* v. *F. W. Woolworth Co., supra,* 159 Cal.App.3d at pp. 593-596, and authorities cited therein.)

Since neither the administrators nor the District induced a breach of plaintiff's contract, those parties cannot be held liable on a theory that they conspired to do so.[5] (*Manor Investment Co.* v. *F.W. Woolworth Co., supra,* 159 Cal.App.3d at pp. 595-596.)

Plaintiff's evidence on the second cause of action was insufficient to have supported a jury verdict in his favor. The trial court did not err in granting a nonsuit on that cause of action. (*Carson* v. *Facilities Development Co., supra,* 36 Cal.3d at pp. 838-839.)

### DISPOSITION

The judgment is reversed as to defendant Nevada Joint Union High School District. In all other respects, the judgment is affirmed.

Blease, Acting P. J., and Byrne, J.,* concurred.

---

[5]Nor, as we have seen, did the administrators agree that plaintiff's employment should be terminated without notice and hearing.

*Assigned by the Chairperson of the Judicial Council.