[Nos. A042809, A044714. First Dist., Div. Four. Jan. 22, 1990.]

GEORGE MOUCHETTE, Plaintiff and Appellant, v.
BOARD OF EDUCATION OF THE OAKLAND UNIFIED
SCHOOL DISTRICT et al., Defendants and Appellants.

304

## COUNSEL

Saperstein & Seligman, Saperstein, Seligman & Mayeda, Brad Seligman and Jocelyn D. Larkin for Plaintiff and Appellant.

Alexander, Millner & McGee, Andrea Ford Roberts and Markita D. Cooper for Defendants and Appellants.

## OPINION

**PERLEY, J.**—The Board of Education (Board), Oakland Unified School District (School District or District) and James Norwood (appellants) appeal from a judgment in favor of George Mouchette (respondent) in this wrongful termination action. Appellants contend: (1) that there is insufficient evidence to support the verdict; (2) that the trial court committed evidentiary and instructional errors; (3) that Mouchette's claim for tortious breach of the covenant of good faith and fair dealing is precluded by *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373]; (4) that Norwood was immune from liability under Government Code section 820.2 and that his conduct was privileged under Civil Code section 47, subdivision 2; and (5) that the emotional distress damages awarded were excessive. Mouchette has cross-appealed the trial court's order denying his motion for attorney fees. We affirm.

### FACTS

Mouchette was employed by the Board for 17 years. He was hired by the Board in 1968 as the administrator of employee benefits. At the time of his termination, he was the coordinator of risk and insurance programs and he was responsible for insurance, risk management and employee pension and benefits programs.

In 1985, the Board was faced with a budget deficit of approximately $5 million which required a reduction in staff. The superintendent of the School District, together with the heads of the various departments, submitted recommendations on which positions should be eliminated. Mouchette, on behalf of his department, proposed that two of his clerical staff be laid off. The superintendent presented this proposal to the Board.

The Board rejected Mouchette's recommendations. Instead, Norwood, a member of the Board, moved that Mouchette's position be eliminated. That motion was adopted by the Board. The superintendent subsequently proposed Mouchette's reinstatement. The Board rejected the proposal. Mouchette was later informed by Board member Laurenson that Norwood would not allow Mouchette's reinstatement.

Five weeks after Mouchette was terminated, the School District hired Robert Apodaca, an independent contractor, as a consultant to perform an internal audit of the District's insurance and annuity programs. Apodaca was placed in Mouchette's old office and supervised Mouchette's old staff. As a result of the audit, Apodaca recommended that the District hire an employee benefits administrator. He later rescinded that recommendation after consulting with outside counsel because it would create reemployment rights for Mouchette under Education Code section 45298. The School District nonetheless hired Apodaca for a new position created by the Board. He performed the same insurance and employee benefit functions that had previously been performed by Mouchette.

Mouchette testified that he was terminated because he refused to assign legal cases to firms chosen by Norwood and because he did not recommend a proposal to provide employee benefit reports by a company which Norwood had referred. Following these actions by Mouchette, Norwood told the superintendent that he wanted Mouchette fired. Assistant Superintendent Paul Disario also testified that he was told by another Board member that Norwood wanted Mouchette fired because he would not give business to Norwood's friends.

Mouchette, who was 61 years old at the time of his termination, was unable to secure permanent employment. He was forced to cash in his supplemental pension to pay for expenses. He was embarrassed by his predicament and felt degraded.

Mouchette brought a wrongful termination action against the Board. Following a three-week trial, the jury found unanimously in favor of Mouchette and awarded him $348,596 in lost compensation, $125,000 in emotional distress damages and $25,000 in punitive damages.

## DISCUSSION

### The Board's Appeal

#### 1. Evidentiary Errors

██ The Board first contends that the trial court erred in admitting evidence on Mouchette's claim of denial of reemployment rights because Mouchette did not comply with the claims procedure set forth in Government Code section 905. The Board argues that Mouchette was required to file a claim asserting denial of reemployment benefits prior to the filing of a lawsuit and that his claim was inadequate because it did not specifically mention reemployment rights.

Pursuant to Government Code section 905, Mouchette was required to file a claim against the Board prior to instituting the present action. ██ The purpose of the filing requirement is "to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate, avoid litigation by settling meritorious claims. The act should not be applied to snare the unwary where its purpose has been satisfied; consequently courts employ a test of substantial rather than strict compliance in evaluating whether a plaintiff has met the demands of the claims act. If the claim satisfies the purpose of the act without prejudice to the government, substantial compliance will be found." (Citations omitted.) (*Elias* v. *San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70, 74 [135 Cal.Rptr. 621].)

Here, Mouchette filed a claim with the Board in 1986 which alleged that the Board had violated his rights by "permanently" terminating him; that he was not laid off due to lack of work or funds and that his job functions were being performed by the Board's legal department and other employees. He further alleged that the Board's action constituted a violation of his civil rights, breach of his employment agreement with the School District, breach of the implied covenant of good faith and fair dealing and negligent and intentional infliction of emotional distress. ██ While the claim did not specifically assert that Mouchette's reemployment rights had been violated, his allegations that he had been permanently terminated and that his job was being performed by others set forth the factual basis for the claim. To have required Mouchette to file an additional claim after Apodaca was hired to replace him would not have furthered the purposes of the claims act. (See *Elias* v. *San Bernardino County Flood Control Dist., supra*, 68 Cal.App.3d at p. 75.) Mouchette was only required to inform the Board of the "damage or loss incurred so far as it may be known at the time of presentation of the claim . . . ." (Gov. Code, § 910, subd. (d).) We con-

clude that Mouchette substantially complied with the claims act. Our conclusion is further supported by the record which indicates that the Board was aware of Mouchette's reemployment rights. Shortly after the filing of Mouchette's claim, the School District sought outside counsel on the very issues of Mouchette's reemployment rights and whether the hiring of an individual other than Mouchette would violate those rights.

■ The Board also contends that the trial court erred in admitting evidence relating to Mouchette's claim for intentional interference with contract. Relying on the well-settled rule that a party to a contract may not be held liable in tort for interfering with his own contract (*Rosenfeld, Meyer & Susman* v. *Cohen* (1983) 146 Cal.App.3d 200, 225 [194 Cal.Rptr. 180]), it argues that Norwood could not be liable for interference with contractual relations because as a member of the Board, he was a party to the contract. The Board's argument misstates the facts.

Norwood was not a party to the contract. Pursuant to Education Code section 35161, the School District acts through the Board which has the authority to approve or ratify contracts entered into on behalf of the District. (Ed. Code, § 39656; *Santa Monica Unified Sch. Dist.* v. *Persh* (1970) 5 Cal.App.3d 945, 952 [85 Cal.Rptr. 463].) As an individual member of the Board, Norwood had no authority to bind the School District to any contract and was not a party to the District's contract with Mouchette. (Cf. *Manor Investment Co.* v. *F. W. Woolworth Co.* (1984) 159 Cal.App.3d 586, 596 [206 Cal.Rptr. 37] [Woolworth and its agent incapable of interfering with their own contractual relationship with another party].) Hence, the trial court properly admitted evidence on Mouchette's interference with contract claim.

## 2. *Governmental Immunity*

■ The Board next contends that the trial court erred in denying its motion for nonsuit on the ground that Norwood was immune from liability under Government Code section 820.2.

Government Code section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

The standard for determining whether the act of a public employee is discretionary and therefore entitled to immunity under section 820.2 was set forth in *Johnson* v. *State of California* (1968) 69 Cal.2d 782, 794-795, footnote 8 [73 Cal.Rptr. 240, 447 P.2d 352]. "[T]o be entitled to immunity

the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." (*Ibid.*)

Here, there was substantial evidence from which the jury could conclude that Norwood did not render a decision which balanced the risks and advantages of terminating Mouchette's position. In fact, the evidence showed that Norwood had no specific knowledge of Mouchette's duties or of the duties of Mouchette's staff. Further, Norwood had not studied the impact on the School District of eliminating Mouchette's position. And, the evidence established that Norwood did not render a considered decision inasmuch as almost immediately following Mouchette's termination, the School District was required to hire Apodaca to perform duties previously performed by Mouchette. On these facts, the decision to terminate Mouchette was not discretionary.

## 3. *Privilege*

■ The Board further asserts that Norwood was privileged in his actions under Civil Code section 47, subdivision 2 because his statements recommending that Mouchette's position be eliminated occurred during the course of an official Board meeting.

Civil Code section 47, subdivision 2 is inapplicable to this action. That statutory section affords a privilege to publications made in legislative, judicial or other official proceedings. (Civ. Code, § 47.) Although the privilege is not limited to defamation actions, the privileged publication must form the basis for the tort. (*Fuhrman* v. *California Satellite Systems* (1986) 179 Cal.App.3d 408, 420-421 [231 Cal.Rptr. 113].) Here, Mouchette's claim was not based on a particular statement or publication made during the Board's meeting, but on the Board's decision to eliminate his position and to deprive him of his reemployment rights.

## 4. *Sufficiency of the Evidence*

■ The Board argues that there is insufficient evidence to support Mouchette's claim for breach of contract based on the theory that his position was not eliminated. The Board claims that because the evidence showed that the position of coordinator of risk and insurance was eliminated and not restored, there was no evidence to support the breach of contract cause of action.

The Board's argument is not supported by the record. ■ "In resolving the issue of the sufficiency of the evidence, we are bound by the estab-

lished rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment." (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].) ■ Here, the evidence was overwhelming that although Mouchette's position was eliminated, Apodaca was hired as a consultant almost immediately following Mouchette's termination to conduct an audit of the District's insurance and annuity programs and was later hired as an employee under a new job title to perform the duties previously performed by Mouchette.

For the same reason, the Board's contention that there is no evidence to support the breach of contract cause of action based on the theory that Mouchette was denied reemployment rights must also fail. The record discloses ample evidence that the position for which Apodoca was hired was similar to the position previously held by Mouchette.

## 5. *Jury Instructions*

■ The Board contends that the trial court erred in its instruction to the jury on Mouchette's breach of contract claim which was based on the theory that he was terminated for impermissible retaliatory reasons and not for lack of work or funds. Relying on *California Sch. Employees Assn.* v. *Pasadena Unified Sch. Dist.* (1977) 71 Cal.App.3d 318, 322 [139 Cal.Rptr. 633], the Board argues that the court should have instructed the jury that the burden of proof was on Mouchette to prove that the Board's action was " 'fraudulent or so palpably unreasonable and arbitrary as to indicate an abuse of discretion. . . .' "

The trial court instructed the jury based on *Short* v. *Nevada Joint Union High School Dist.* (1985) 163 Cal.App.3d 1087, 1098-99 [210 Cal.Rptr. 297] that "the plaintiff bears the initial burden of showing that an improper motivation played a part in his discharge. If the plaintiff makes such a showing, then the defendant must prove that the termination would still have occurred even if the improper reason had not been present." The *Short* court explained that the standard set forth in *California Sch. Employees Assn.* v. *Pasadena Unified Sch. Dist., supra*, 71 Cal.App.3d at page 322 applied in cases where there was only one reason (e.g., budget considerations) for the termination. (*Short* v. *Nevada Joint Union High School Dist., supra*, at pp. 1097-1098.) The court determined that where there was evidence of dual motives, permissible and impermissible for the termination, the burden of proof was on the employer to show that the termination would have occurred even if the improper reason had not been present. (*Id.* at p. 1099.) In the present case, there was evidence that Mouchette was

terminated for retaliatory reasons as well as budgetary concerns. The trial court therefore properly instructed the jury in the language of *Short.*

6. *Implied Covenant of Good Faith and Fair Dealing*

The Board contends that Mouchette's claim for tortious breach of the implied covenant of good faith and fair dealing must be dismissed in light of *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654. *Foley* held that tort remedies are not available for breach of the implied covenant of good faith and fair dealing in the employment context. (*Id.* at p. 700.) The *Foley* court, however, did not eliminate the cause of action but simply limited plaintiffs to contractual remedies for breaches of the implied covenant. (*Id.* at p. 696.)

The Board further argues that *Foley* requires that the verdict awarding emotional distress damages here must be reversed. In *Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 993 [258 Cal.Rptr. 592, 772 P.2d 1059], the court held that *Foley* is to be given full retroactive effect. The court recognized that its decision could require retrial of an action where a general verdict was rendered or where the jury reached a special verdict which did not separate tort damages for breach of the implied covenant from tort damages available under other theories. (*Id.* at p. 992.) While retrial may be required in some cases due to the *Newman* decision, the judgment here may be upheld because there was substantial evidence supporting Mouchette's claim of intentional interference with contract.

It is well settled that "where several issues in a cause are tried and submitted to a jury for its determination, a general verdict may not be disturbed for uncertainty, if one issue is sustained by the evidence and is unaffected by error. [Citations.] When a situation of this character is presented it is a matter of no importance that the evidence may have been insufficient to sustain a verdict in favor of the successful party on the other issues or that reversible errors were committed with regard to such issues." (*Hume* v. *Fresno Irr. Dist.* (1937) 21 Cal.App.2d 348, 356-357 [69 P.2d 483].) While this rule has generally been applied in cases involving a general verdict, we conclude that it should apply as well to a situation as here where a special verdict is rendered on two causes of action. In this instance, the special verdict rendered is indistinguishable from a general verdict in which a jury finds in favor of a party on more than one cause of action. As the evidence here clearly supports Mouchette's claim of emotional distress resulting from Norwood's interference with his contractual relations, the jury's verdict may be upheld.

The Board also contends that the jury's verdict of emotional distress damages was excessive and not supported by the evidence. We are not persuaded.

An appellate court may reverse an award of damages only if the award is excessive as a matter of law or if after reviewing the record favorably to the judgment, the award is so grossly disproportionate to the harm suffered as to raise a presumption that it is the result of passion or prejudice. (*Smith* v. *Brown-Forman Distillers Corp.* (1987) 196 Cal.App.3d 503, 518 [241 Cal.Rptr. 916].) We must determine every conflict in favor of the prevailing party, who is entitled to the benefit of every inference. (*Ibid.*) Applying these principles here, we conclude that the jury's award of emotional distress damages was not grossly disproportionate to the harm suffered.

The evidence showed that Mouchette was terminated when he was almost 62 years old. He was unable to secure permanent employment and became very depressed following his termination. Mouchette testified that he was embarrassed by his predicament. He felt degraded to be terminated after all of his years of service to the School District. His wife testified that he did not sleep well, that he was irritable and that "the pressure of not having a job when he had always had one, never expected not to have one, really did upset him terribly." On this record, there is no basis for reversing the jury's award of emotional distress damages.

### 7. *Punitive Damages*

Finally, the Board urges that there is insufficient evidence to support the punitive damages award. In determining whether there is substantial evidence to support the jury's verdict on punitive damages, we must examine the whole record, viewing the facts in a light most favorable to the judgment, so as to determine whether there was substantial evidence from which the jury could reasonably conclude that Norwood acted with malice or oppression towards Mouchette. (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 922-923 [148 Cal.Rptr. 389, 582 P.2d 980].)

Our review of the record indicates that the jury's verdict was justified. The evidence showed that Norwood proposed Mouchette's termination in retaliation for Mouchette's refusal to assign legal cases to firms chosen by Norwood and because Mouchette did not recommend that the School District engage the services of an insurance company referred by Norwood. Mouchette also presented evidence that Norwood had told others that he wanted Mouchette fired. Specifically, Assistant Superintendent Paul Disario testified that another Board member told him that Norwood wanted Mouchette fired because he would not give business to Norwood's friends. Another Board member testified that Mouchette could not be reinstated because Norwood would not allow it.

In order to prove malice, the evidence must show that Norwood acted with a motive and willingness to vex, harass, annoy, or injure or with a conscious disregard of Mouchette's rights. (*Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d at p. 922.) Based on the evidence adduced at trial, we conclude that the jury could reasonably infer that Norwood acted with malice toward Mouchette.

### *Mouchette's Cross-appeal*

 Mouchette contends that attorney fees should be awarded as an element of damages on his claim for breach of the implied covenant of good faith. He relies on *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796] where the court held that attorney fees were recoverable as damages for breach of the implied covenant of good faith and fair dealing in an insurance bad faith action.

Mouchette further relies on the Supreme Court's decision in *Foley* in which the court recognized the possibility of awarding attorney fees to fully compensate a prevailing plaintiff for breach of the implied covenant in a wrongful termination action. (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 696.) The *Foley* court, however, expressly declined to expand the damages recoverable for breach of the implied covenant. "[I]n the absence of legislative direction to the contrary contractual remedies should remain the sole available relief for breaches of the implied covenant of good faith and fair dealing in the employment context." (*Ibid.*) In light of this dictate by our high court, we conclude that the trial court properly denied Mouchette's motion for attorney fees.

### DISPOSITION

The judgment is affirmed. Mouchette to recover costs on appeal.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied February 9, 1990, and appellants' petition for review by the Supreme Court was denied April 25, 1990.