[No. A116914. First Dist., Div. Five. Oct. 26, 2007.]

KIM GATELY, Plaintiff and Appellant, v.
CLOVERDALE UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

## COUNSEL

Perry, Johnson, Anderson, Miller & Moskowitz and Scott A. Lewis for Plaintiff and Appellant.

School and College Legal Services of California and Nancy L. Klein for Defendant and Respondent.

## OPINION

**NEEDHAM, J.**—Appellant Kim Gately (Gately) filed a petition for writ of mandate under Code of Civil Procedure section 1085 seeking reinstatement, backpay and other relief after she was terminated from her position as business manager of respondent Cloverdale Unified School District (District). The primary issue was whether Gately was a "senior management employee" within the meaning of Education Code section 45108.5,[1] such that she was entitled to notice of termination, pursuant to section 35031, at least 45 days before the expiration of the term of her three-year employment contract. We affirm the superior court's order denying the writ.

---

[1] Further statutory references are to the Education Code unless otherwise indicated.

## FACTS AND PROCEDURAL HISTORY

District has had a long history of financial problems. In 1997, after it overstated its projected revenues by approximately $670,000, the Sonoma County Office of Education enlisted the services of the fiscal crisis management and assistance team (FCMAT) to prepare a multiyear projection of the 1997–1998 budget and to review the budgeting process, staffing and business practices. Among other things, FCMAT recommended that District make a business official part of the administrative or management team "to ensure all decisions involving budget occur with the knowledge of the business office."

In May 2001, District again enlisted FCMAT's assistance in developing the 2001–2002 budget and in reviewing the progress made by District on the 1998 recommendations. FCMAT's report concluded, "[T]he district finds itself in a precarious fiscal position and continues to rely on unstable, one-time reserves rather than making the appropriate reductions to programs, services and personnel. Additional changes will need to be implemented by the district to resolve deficit spending and depletion of the general fund reserves. FCMAT believes that with the filling of the Business Manager position and other organizational changes, the district is making a positive commitment to maintain its financial solvency."

District solicited applications for a business manager position. According to the job announcement description, the business manager "Designs and maintains all aspects of the fiscal operations of the district including budget development, income projections, payroll, purchasing, contracts and bids, and other operations related to the fiscal policies of the schools, central administration, and Board of Trustees." Gately was hired as the business manager under an employment agreement approved by District's board of trustees (Board). The term of the agreement ran from July 1, 2001, to June 30, 2004, at an annual salary of $69,000, and provided, "Subsequent to a satisfactory evaluation of the Business Manager's performance and before March 1 of each year of the Agreement, the Board may extend the term of the Agreement. The Agreement may be extended only by Board action." Board did not pass a resolution designating the business manager as a senior management employee.

District continued to have serious fiscal problems. Jim Maxwell, who had been part of the FCMAT study team in 1998, predicted deficit spending in 2002–2003. If expenditures were not cut, District's mandated reserves would fall below the 3 percent minimum required by law. Maxwell made a number of recommendations and urged that an organizational chart be developed under which all departments making expenditures (i.e., maintenance, operations, transportation, food service) would report to the business manager. No

lines of reporting were in fact established and the business manager position was given no supervisory duties.

Barbara Tatman is the director of fiscal services for the Sonoma County Office of Education and was in charge of reviewing District's interim statements and adopted budgets. She believed the business manager position was not structured to provide the comprehensive oversight that was necessary to ensure financial stability.

In June 2002, Gately received a favorable job evaluation from John Wight, who was then the superintendent. Claudia Rosatti replaced Wight as superintendent during the 2002–2003 school year. Rosatti believed there were problems with Gately's accuracy and timeliness, and she did not feel confident she could rely on Gately's calculations and projections. Barbara Tatman had expressed concerns about whether Gately could do all the jobs she was assigned to do, as well as the accuracy of her multiyear budget projections.

Rosatti discussed some of these concerns with Gately on November 9, 2004. Gately indicated at that meeting that she had not come to Rosatti due to her own stress about the situation, but that she wanted to make things work. Although she did not intend to terminate Gately's employment at that time, Rosatti suggested that Gately consider looking for another position, and Gately agreed. Gately told Rosatti she would be submitting her resignation, but she never did so. On December 15, 2004, Gately took a medical leave from which she did not return.[2]

On February 28, 2005, Board voted to terminate Gately's employment agreement (which had expired on June 30, 2004), effective June 30, 2005. Meanwhile, the District contacted FCMAT again for assistance with its budget and the identification of necessary cuts. The pattern of deficit spending had continued and it was estimated that if changes were not made, the reserve would be zero by June 2007. On June 15, 2005, Board adopted resolution No. 205-19, which eliminated several positions, including that of business manager, based on a lack of funds and a lack of work. Rosatti notified Gately by letter that she was laid off effective July 31, 2005, and would be afforded reemployment rights as provided under the Education Code.

At the same time that it eliminated the business manager position, District created the new position of chief financial operations officer (CFO) to oversee

---

[2] Gately does not claim that she was terminated in violation of any statute or policy relating to this medical leave.

all matters affecting District's finances. This position was significantly different than that of business manager. The business manager had no supervisory authority over programs or staff, and was not responsible for formulating policy relating to fiscal matters. On the other hand, the CFO would be charged with supervising, directing and coordinating all of District's business support activities, building District's budget, analyzing revenues and preparing state mandated budget documents and reports. The CFO position, though more highly compensated than the business manager position had been, was integral to the restructuring of District's financial operations. District did not notify Gately of this opening.

Krista Eisbrenner, who had worked as a business manager for another school district, was hired as the CFO at a salary that exceeded Gately's former salary as business manager by more than 10 percent. District created another new position, that of fiscal specialist, which was filled by Rosatti's secretary, at a salary that was lower than Gately's former salary. According to Rosatti, Gately would not have been qualified for the CFO position because it required skills she did not possess. District could not afford to compensate both a business manager and a CFO.

Gately filed a petition for writ of mandate seeking reinstatement and backpay. The petition alleged that Gately had been a senior management employee under spsection 45108.5, subdivision (a)(2), and as such, her three-year employment contract had been automatically renewed when she was not notified of its termination 45 days before it expired on June 30, 2004. The petition also alleged that the layoff based on lack of work and lack of funds was pretextual, and that she had actually been terminated for disciplinary reasons without receiving notice and an opportunity to be heard. The trial court denied the petition and issued a statement of decision that concluded Gately was not a senior management employee, because she had not been designated as such by Board. The statement of decision did not address the legality of the layoff. This appeal follows.

## DISCUSSION

### Senior Management Status

Gately contends she was a "senior management" employee who was entitled to a renewal of her three-year contract unless District gave her notice it was terminating that contract at least 45 days before its expiration. District responds that under the Education Code, a classified employee does not fall within the category of senior management unless a school board confers this status by a formal vote, something that was never done in Gately's case. Having independently reviewed the trial court's resolution of this issue,

which depends on the interpretation of the relevant statutes and the application of the law to undisputed facts, we reject Gately's claim. (See *Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1492 [35 Cal.Rptr.3d 596]; *Walker v. Allstate Indemnity Co.* (2000) 77 Cal.App.4th 750, 754 [92 Cal.Rptr.2d 132].)

■ There are two general categories of public school employees under California law: certified employees, or teachers, and classified employees, who are not subject to the certification requirements of teachers. (§§ 44800 et seq., 45100, 45103, subd. (a).) Most classified employees who pass a probationary period of up to one year become "permanent" employees subject to disciplinary action only for reasonable cause. (§§ 45101, subd. (b), 45113, subds. (a), (b), 45301, 45302.) Certain employees categorized as "senior management" are exempt from permanent status and its attendant protections, but they cannot be terminated unless they are given written notice 45 days before the expiration of any contractual term of employment in accordance with section 35031. (§ 45100.5, subd. (c).) If such notice is not given, the senior management employee "shall be deemed reelected for a term of the same length as the one completed, and under the same terms and conditions and with the same compensation." (§ 35031.)

The parties dispute the vehicle by which a classified employee becomes a senior management employee. Section 45100.5 provides in relevant part, "(a) The governing board of a school district *may adopt a resolution designating certain positions as senior management* of the classified service. . . . [¶] (b) Employees *whose positions are designated as senior management* of the classified service shall be a part of the classified service and shall be afforded all rights, benefits, and burdens of other classified employees, except that they shall be exempt from all provisions relating to obtaining permanent status in a senior management position." (Italics added.) Section 45108.5 provides: "(a) Senior management employee means either of the following: [¶] (1) An employee in the highest position in a principal district program area, as determined by the governing board, which does not require certification qualifications, and which has districtwide responsibility for formulating policies or administering the program area. [¶] (2) *An employee who acts as the fiscal advisor to the district superintendent.* [¶] (b) *The maximum number of positions which may be designated as senior management positions shall be as follows*: [¶] (1) For districts with less than 10,000 units of average daily attendance, two positions. [¶] (2) For districts with 10,000 to 25,000 units of average daily attendance, inclusive, three positions. . . ." (Italics added.)

Section 45100.5 authorizes a school district to *designate* certain classified employees senior managers by *adopting a resolution.* Section 45108.5, subdivision (b) limits the number of senior managers that may be

designated based on the size of a school district's average daily attendance. Under the plain language of these provisions, a classified employee becomes a senior management employee only when the school board so designates.

Gately argues that no designation by Board was required in her case because she provided fiscal advice to the superintendent as part of her job duties and section 45108.5, subdivision (a)(2) defines senior management employees to include any person who "acts as the fiscal advisor to the district superintendent." She argues that, under this subdivision, employees performing the role of fiscal advisor are senior management regardless of whether they have been so designated by a school board.

█ Read in isolation, section 45108.5, subdivision (a) could arguably be interpreted as Gately suggests. But that subdivision is not the only provision relating to senior management employees. Statutory provisions that are in pari materia, i.e., related to the same subject, should be construed together as one statute and harmonized if possible. (*People v. Honig* (1996) 48 Cal.App.4th 289, 328 [55 Cal.Rptr.2d 555] (*Honig*).) When apparently unambiguous language is considered in light of closely related statutes, "a legislative purpose may emerge that is inconsistent with, and controlling over, the language read without reference to the entire scheme of the law." (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 50 [283 Cal.Rptr. 584, 812 P.2d 931]; see also *Honig, supra,* at p. 327, fn. 16.) The courts must avoid nullifying one statute in favor of another when attempting to harmonize related provisions. (*Honig, supra,* at p. 328.)

Sections 45100.5 and 45108.5 were simultaneously enacted in 1983 as part of Senate Bill No. 813 (1983–1984 Reg. Sess.) and relate to the same subject matter—senior management employees. Section 45100.5 allows a school board to designate an employee as senior management. Section 45108.5, subdivision (b) restricts the number of employees that may be so designated, based on the size of the school district. If the definition of senior management employee under section 45108.5, subdivision (a) is interpreted to mean that certain employees are senior management whether or not they are designated as such, the numerical restrictions of subdivision (b) would be rendered meaningless because any number of employees might qualify as senior management under the definition provided in section 45108.5, subdivision (a). On the other hand, if the definition of senior management employees in section 45108.5, subdivision (a) is read to limit and define the types of positions that the school board may elect to designate as senior management, each of the various provisions of sections 45100.5 and 45108.5 is given full effect. We elect the latter construction of the statute, which requires that school boards designate their senior management employees, over the former, which would render nugatory section 45108.5, subdivision (b)'s numerical limits on senior management positions.

Our conclusion that a senior management employee must be designated by the school board is consistent with the legislative history of Senate Bill No. 813 (1983–1984 Reg. Sess.). The Senate Committee on Education's "Summary of Senate Bill 813" explained that the bill "[g]ives local school boards authority over senior management classified personnel." The Legislative Counsel's Digest for Senate Bill No. 813 (4 Stats. 1983 (1983–1984 Reg. Sess.) Summary Dig., p. 170) provided, "This bill would permit the governing board . . . to adopt a resolution designating certain classified employees having significant responsibilities for formulating district policies or administering district programs, or employees who act as the fiscal advisor to the district superintendent, as the senior management of the classified service . . . ." (See *State Farm Mut. Auto. Ins. Co. v. Haight* (1988) 205 Cal.App.3d 223, 236 [252 Cal.Rptr. 162] [court may consider digest of Legislative Counsel in determining statutory intent].)

Gately argues that the statutory scheme may be harmonized in a different manner. She notes that under section 45113, classified employees become "permanent" after a probationary period, and are then subject to termination only for cause, but that classified employees who have been *designated* senior management under section 45100.5, subdivision (b) are exempt from permanent status. Gately posits that the Legislature intended to create two classes of senior management employees: those designated by the school board, who are not accorded permanent status but who are entitled to notice of termination 45 days before the expiration of the employment term pursuant to section 45100.5, subdivision (c), and those high level administrators and financial advisors who meet the definition of "senior management" under section 45108.5, subdivision (a), and who are not exempt from permanent status. Gately argues that she was a permanent, senior management employee who could only be terminated for cause and who was entitled to 45 days' notice of termination.

▋ Nothing in the language of the relevant statutes or the history of Senate Bill No. 813 (1983–1984 Reg. Sess.) suggests the Legislature intended to create a class of employees who, without any action by the school board, would be entitled to both permanent status and to an automatic renewal of their contract absent the 45-day notice of termination. Gately's proposed interpretation would run counter to the legislative goal of giving school boards authority over senior management personnel. It also fails to harmonize the numerical limits on senior managers established by section 45108.5, subdivision (b). We therefore hold that a classified employee can only obtain senior management status if that employee is designated a senior manager by the school board. Gately was never designated a senior manager, and she was not entitled to an automatic renewal of her contract based on District's failure to provide notice of termination at least 45 days before the expiration of her three-year term of employment.

*Propriety of the Layoff*

Gately claims District acted improperly when it purported to terminate her based on the expiration of her contract and then advised her that she was being laid off for "lack of work/lack of funds." We disagree.[3]

We note at the outset that the trial court did not address the legality of the layoff in its written statement of decision, though the issue was raised in the petition for writ of mandate. (Code Civ. Proc., § 632.) Because Gately failed to object to this omission in the trial court, we must presume on appeal all the factual findings necessary to support the judgment that are supported by substantial evidence. (Code Civ. Proc., § 634; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134 [275 Cal.Rptr. 797, 800 P.2d 1227]; *Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 59–60 [58 Cal.Rptr.3d 225].) In reviewing the judgment denying the petition, we defer to these implied factual determinations if they are supported by substantial evidence. (*California Teachers Assn. v. Vallejo City Unified School Dist.* (2007) 149 Cal.App.4th 135, 144 [56 Cal.Rptr.3d 712]; *Welch v. Oakland Unified School Dist.* (2001) 91 Cal.App.4th 1421, 1427 [111 Cal.Rptr.2d 374].)

■ Section 45308 provides that classified employees "shall be subject to layoff for lack of work or lack of funds." Such layoffs are valid only when they are the "result of a bona fide reduction or elimination of the service being performed by any department." (*Short v. Nevada Joint Union High School Dist.* (1985) 163 Cal.App.3d 1087, 1097 [210 Cal.Rptr. 297] (*Short*).) The school district has wide discretion in setting its budget and a layoff decision will be upheld unless it was " 'fraudulent or so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law.' " (*California Sch. Employees Assn. v. Pasadena Unified Sch. Dist.* (1977) 71 Cal.App.3d 318, 322.) In cases where the elimination of a position is the product of dual motives—consisting of both an impermissible ground for termination and a legitimate budgetary concern—we apply a "but-for" test to determine whether the decision would have been made on budgetary grounds alone, in which case it must be allowed to stand notwithstanding the existence of an additional, improper motive. (*Short, supra,* at pp. 1098–1099.)

Gately contends the "lack of work/lack of funds" rationale for eliminating her position as business manager was pretextual, and arose from the personal antipathy of Superintendent Rosatti rather than legitimate budgetary concerns.

---

[3] Senior management employees "shall be afforded all rights, benefits, and burdens of other classified employees" with the exception of permanent status (§ 45100.5, subd. (b)). Even if Gately had been a senior management employee, as she alleged, she would have been subject to a bona fide layoff based on a lack of funds or work.

Gately claims that her termination fails the "but-for" test because she would have been retained on staff had Rosatti not been unhappy with her performance. She cites a number of circumstances suggesting that the layoff for lack of work or funds was merely pretextual: she was asked to resign by Rosatti before she was actually given notice of her termination; she was initially advised that her termination was based on the expiration of her contract and only later was she told she was being laid off for lack of work or funds; and she had been told there was cause to terminate her, even though the District had elected not to pursue a termination for cause. Gately notes that after her position was eliminated and she was advised of the layoff, the District created the position of CFO, which included her duties as business manager and paid a higher salary.

Accepting these facts as true, other evidence supported an inference that the layoff was made for legitimate fiscal and organizational reasons. The record contains evidence that District's finances were in dire straits and that significant reorganization was necessary. Part of the recovery plan included consolidating under a CFO all operations affecting revenues and expenditures. The CFO was the highest ranking executive after the superintendent, and the position required skills that Gately lacked. Although the CFO was compensated more generously than Gately had been as business manager, this disparity reflected the CFO's more demanding duties, and the District could not afford to fund both positions. Other employees were laid off at the same time as Gately. Although Gately did not receive notice when the CFO position became available, this job was not within the same classification as her former position as business manager, and she was not entitled to "reemployment" in that capacity. (See § 45298.) She was entitled to participate in promotional examinations, and could have applied for the CFO position if she had so chosen, but Gately cites no authority for the proposition that she was entitled to special notice of the opening in that position or that District acted improperly by failing to provide such notice.

Substantial evidence supported the trial court's implied factual finding that the layoff was not pretextual and that the business manager position would have been eliminated for bona fide financial reasons regardless of Gately's job performance or any discord between her and Superintendent Rosatti. Because we uphold the decision to eliminate the business manager position based on lack of funds and lack of work, we need not specifically resolve whether, notwithstanding the provisions of her three-year contract, Gately qualified as a permanent, classified employee subject to termination only for reasonable cause.

## DISPOSITION

The judgment (order denying petition for writ of mandate) is affirmed. Costs on appeal are awarded to respondent.

Simons, Acting P. J., and Gemello, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 16, 2008, S158777.